*In re* MARRIAGE OF DONNA JEAN SMITH, Petitioner-Appellee, and CARROLL EUGENE SMITH, Respondent-Appellant.

Second District    No. 2—83—0907

Opinion filed November 28, 1984.

Alex M. Abate, of Abate & Pirello, of Rockford, for appellant.

David L. Martenson, of Martenson & Alexander, P.C., of Rockford, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Carroll Eugene Smith, 55, appeals from an order of the circuit court of Winnebago County which dissolved his marriage to petitioner-appellee Donna Jean Smith, 54, apportioned their marital property and obligated respondent to pay $3,500 to petitioner's attorney. Respondent contends the trial court abused its discretion in concluding that he dissipated at least $50,000 in marital assets, in apportioning the parties' marital property, and in ordering him to pay one-half of petitioner's attorney fees. Since we conclude the trial court committed no reversible error, we affirm.

Petitioner and respondent were married on May 27, 1949. The parties' three children all have attained the age of majority, but one child continues to live with petitioner. Neither party began the marriage with any assets. Petitioner worked full-time outside the home for one year and then became a homemaker for the duration of their marriage. Respondent worked as a tool and die maker until 1973, when he quit that work to manage the parties' real estate assets on a full-time basis. Starting in 1958, the parties began acquiring and renovating real estate. Respondent performed almost all of the construction, renovation, management and handling of their properties. Petitioner testified she answered phone calls and collected rents from the tenants on occasion.

Petitioner filed her petition for dissolution of marriage on November 19, 1982. At trial, the court after reviewing the evidence found that respondent had dissipated between $50,000 and $80,000 in marital assets. Based in part upon this finding, the trial judge stated that he was awarding petitioner approximately $290,000 or 63% of the marital property and was awarding respondent approximately $160,000 or 37% of the parties' property. The parties stipulated that the court's apportioning of the marital property would provide petitioner with rental income of $2,750 monthly and respondent with $1,400 monthly. The court also ordered respondent to pay one-half or $3,500 of petitioner's attorney fees and barred both parties from receiving maintenance. Respondent filed a timely notice of appeal from the trial court's order entered on September 23, 1983.

The first argument advanced by respondent is that the trial court erred in concluding that he dissipated assets of the marital estate. The trial court expressly apportioned a larger percentage of the marital estate to petitioner because it concluded respondent "improperly spent" funds and "hadn't accounted for all funds sufficiently to the Court." Petitioner responds that the trial court's finding that respondent dissipated marital assets is supported by the record.

Section 503(c)(1) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (now codified as section 503(d)(1)) directs the court to consider in dividing marital property "the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit ***." (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(1).) Dissipation of marital assets by one spouse is not an acceptable practice. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) Dissipation has been defined as "the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." (Ill. Ann. Stat., ch 40, par. 503(d)(1), Supp. to Hist. & Prac. Notes, at 57 (Smith-Hurd Supp. 1984-85), citing *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866; *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 453 N.E.2d 1357; *In re Marriage of Schriner* (1980), 88 Ill. App. 3d 380, 410 N.E.2d 572.) A finding of dissipation is possible even though the act occurred prior to the commencement of the dissolution proceedings (see *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087), and the dissipating party need not derive personal benefit from the dissipation of the asset to be held accountable. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) The trial court's finding regarding the allocation of marital property including making allowances for dissipation will not be reversed absent an abuse of discretion. *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795; *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334.

Essentially, respondent attacks the trial court's finding as unsupported by the evidence. In discussing the specific assets which were at least partially dissipated, respondent asserts that Illinois courts consistently have required positive proof that marital property was dissipated. Implicit is respondent's contention that petitioner was obligated to establish how the funds were spent. Our research has disclosed no Illinois decision which has specifically assigned to either party the burden of proving for what purposes the funds were spent. We suspect the paucity of discussion on this issue is caused perhaps by the fact that in almost every case involving an alleged dissipation, the party charged with the dissipation instinctively comes forth with at least some evidence concerning the expenditure of the funds. This case is unique in that respondent in most cases has offered no evidence on how he spent funds received from the liquidated assets.

While Illinois courts have not precisely addressed this question,

several decisions provide guidance. In *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151, this court affirmed the trial court's finding that the husband had dissipated marital assets by cashing in life insurance policies with a value of $13,900 and by withdrawing $16,000 from the parties' joint savings account. This court noted that the husband's explanation of how the funds were spent requires the trial court to make a determination as to his credibility, and concluded that the trial court's disbelief of the husband's explanation did not constitute error. (125 Ill. App. 3d 1, 6, 465 N.E.2d 151, 154.) Similarly, in *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545, the trial court found that the husband had dissipated $15,000 in marital assets by withdrawing that amount from his credit union account and using it for nonmarital purposes. In contrast to the absence of testimony from respondent here, the husband in *Smith* testified he used the money to finance a trip to Las Vegas, and "for the payment of taxes and attorney fees, and for the purchase of various household appliances and furniture for the apartment in which he lived after he ceased living with the family." (114 Ill. App. 3d 47, 50, 448 N.E.2d 545, 548.) Finding, as this court did in *Lord*, that the spouse's explanation is a question of credibility, the appellate court concluded that the trial court's finding that the entire $15,000 was dissipated was adequately supported by the evidence. Compare *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866 (appellate court affirmed trial court's finding that wife had not secreted assets, where the record contained a complete list of the wife's expenditures for herself and the marital residence and where appellate court found that the record contained no other evidence indicating wife had spent the money for purposes unrelated to the marriage).

The appellate court in *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 944, 429 N.E.2d 1334, 1339, likewise affirmed the trial court's finding that the husband had dissipated marital assets because of the inadequacy of the husband's proof, stating that the husband had cashed in securities "without completely accounting for proceeds of sale." (*Cf. In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 441 N.E.2d 1283 (remandment required where husband vaguely testified that he used funds from second mortgage to finance parties' affluent lifestyle and where husband did not show the specific disposition of the funds).) Even in the two cases cited by respondent, *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087, and *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, the court did not impose the burden of tracing the dissipated assets on the spouse alleging dissipation. In *Hellwig*, the dissipating spouse

offered the explanation regarding the reasons for the transfers of funds and realty, and in *Klingberg*, the dissipating spouse admitted he withdrew marital funds to pay child support to a wife of a former marriage and the only issue for the reviewing court to resolve was whether the dispersal was for a marital purpose.

The common element in these decisions is that the party charged with dissipating assets offered some explanation as to the disposition of the funds. If the expenditures were not documented adequately, the courts affirmed the findings of dissipation with the exception of *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 441 N.E.2d 1283, where this court had already determined that another issue necessitated remandment and thus, remanded the dissipation issue because of the inadequacy of the proof. Courts in other jurisdictions also have required the party charged with dissipation to come forward with specific evidence concerning the disposition of the funds. In *Barriger v. Barriger* (Ky. 1974), 514 S.W.2d 114, for example, the Court of Appeals of Kentucky affirmed the trial court's finding that the husband had dissipated $25,000 in marital assets. The evidence showed the husband had spent some of the funds on a trip to Las Vegas, had lost some of the money gambling, and "[h]e was unable to account for the remainder of the funds except to say that he paid a lawyer $1,100 and spent the remainder on 'entertainment'." (514 S.W.2d 114, 115.) The *Barriger* court noted that although the husband was an accountant, "he was unable to reconstruct the financial records to the satisfaction of the trial court." (514 S.W.2d 114, 115.) The court in *Bland v. Bland* (Mo. App. 1983), 652 S.W.2d 690, likewise found inadequate the husband's proof offered in defense of a charge of dissipation. There, the husband contended he used the $10,800 withdrawn from joint savings accounts to pay marital expenses. In affirming the trial court's finding of dissipation, the Missouri Court of Appeals noted that the trial court was free to believe or disbelieve the husband's explanation, and after reviewing the husband's proffered evidence, the reviewing court stated:

> "In light of the vague and indefinite testimony of the husband in this regard, unsupported by any form of receipts or recorded account, we cannot say the rejection by the trial court of this explanation was unjustified." (652 S.W.2d 690, 692.)

See also *Cooksey v. Cooksey* (1984), 280 S. C. 347, ___, 312 S.E.2d 581, 585 (recognizing that courts of other jurisdictions have ruled that a spouse who removes marital property in contemplation of divorce is required to either account for it or have some part of its value charged against that spouse's share of marital property); *E.E.C. v.*

*E.J.C.* (Del. 1983), 457 A.2d 688 (husband's explanation that his salary was spent during the parties' separation to pay expenses for two households was inadequate to avoid finding of dissipation).

■■ From these Illinois and foreign jurisdiction cases, we can extract the general principle that the person charged with the dissipation is under an obligation to establish by clear and specific evidence how the funds were spent. General and vague statements that the funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. In the case at bar, petitioner established and respondent admitted that certain marital assets were liquidated by respondent. The trial court specifically found that respondent dissipated assets of the marital estate with a value between $50,000 and $80,000. We proceed to examine the evidence offered by defendant as to each of the liquidated assets. The assets consisted of real estate, stock, certificates of deposit and vehicles.

REAL ESTATE

Defendant testified that five months prior to the dissolution proceedings, he sold one real estate property, received $14,000 which he did not deposit into any bank account, and acknowledged that "I spent it, I guess." He expressly stated he did not give any of the money to petitioner. These funds should be included as dissipated property.

On November 5, 1983, respondent sold a property by agreement for deed and received $2,500, which respondent testified was used to satisfy the existing balance due on the property and to pay the real estate broker. Since these payments were for marital expenses, this amount should not be included as dissipated property.

On November 1, 1983, respondent sold property pursuant to an agreement for deed and received $2,600 as a down payment, which respondent testified he used to pay bills. Respondent could not recall which bills he paid, stated he did not deposit the funds into any account, and admitted he gave petitioner none of the money. This amount should be included as dissipated marital property.

On June 8, 1982, respondent received $1,387 as a down payment on a property. Respondent testified that he did not deposit the funds into a bank account, spent the money, and did not give petitioner any of the funds. This amount should be included as dissipated marital assets.

STOCK

In June 1983, respondent sold 1,100 shares of Southern Company

stock for approximately $17,000 and deposited the funds into an account at the North Towne Bank, Rockford, Illinois. Respondent testified that the defendant's group exhibit No. 2 contained cancelled checks which he wrote on the stock proceeds to pay marital debts and expenses. Our review of the exhibit confirms his assertion that most of the checks were written to pay marital debts: the Internal Revenue Service ($6,183.57), the Illinois Department of Revenue ($1,054), Douglas R. Aurand, county collector ($283.26; $8,067.84), and an insurance agency ($670.94). However, respondent's attorney, Alex M. Abate, was also paid $3,000 from this account. Since the expenditures on marital debts exclusive of the amount paid to respondent's attorney approximately equals the amount received from the sale of the stock, the $17,000 should not be included as a dissipated asset.

CERTIFICATES OF DEPOSIT

Respondent testified that after the dissolution proceedings had commenced, he cashed in four certificates of deposit totaling $40,000 plus interest. The amount of the interest was not specified at trial. The trial judge stated that he was taking notice of the fact that the liquidation of the certificates of deposit occurred after commencement of the dissolution proceedings. Respondent stated that he paid bills with the money, but the only specific expenditures he could remember were for a 1966 Dodge motorhome ($5,300) and a $2,000 loan to his son for the purchase of the son's house. Based on these two marital expenditures, respondent asserts in his appellate brief that the trial court at most could have found the dissipation of $32,700. The only evidence introduced concerning how the $32,700 was spent was respondent's testimony that he spent $3,900 on vacations with his girlfriend, Shirley, during 1983, and less than $500 monthly on her living expenses during 1982. On direct examination, respondent testified that he paid for some of the parties' living expenses out of the $40,000 or out of the income from the rental properties, but testified he did not know how much was spent and did not identify any specific marital expenses which he paid. Since respondent was unable to explain where the remainder of the $32,700 received from the certificates was spent, the entire $32,700 amount should be included as a dissipated asset.

VEHICLES

Respondent testified he sold a truck and a boat after the dissolution proceedings commenced and received $1,000. He stated he spent the money and did not give any of the proceeds to petitioner. Re-

spondent unpersuasively argues these funds were not proved by petitioner to have been dissipated. Petitioner established she did not receive any of the money, and respondent was unable to establish that the money was expended for a marital purpose. Therefore, the $1,000 should be included as dissipated funds.

■ Based upon the above conclusions, respondent dissipated at least $51,687. Additionally, the record contains evidence that respondent withdrew more than $14,000 in marital funds from bank accounts in his name alone. Although some of these funds may have been used to pay bills on the rental properties, determination of the amount spent for marital purposes is made impossible by respondent's total lack of proof on this issue. Also, Richard Awlward, petitioner's expert in determining the parties' 1982 income, concluded after examining the parties' 1982 tax returns and bank statements that their net cash income (rental income minus business expenses exclusive of sales of property) was $45,000. No evidence was presented that any of this sum was deposited into a bank account, and respondent did not know where he spent the approximately $45,000 in net cash income. He did admit, however, that he contributed "something more than $1,000 a month" toward the living expenses of girlfriend Doris for a six-year period during his marriage to petitioner. Based upon our review of the evidence, the trial court's estimate that respondent had dissipated marital assets with a value between $50,000 and $80,000 is supported by the evidence.

■ Respondent next asserts that the trial court erred in apportioning the marital property between the parties. Specifically, respondent argues based upon the statutory factors contained in section 503(c) (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)), that an award of 63% of the marital property to petitioner and 37% to respondent constitutes an abuse of discretion. In conjunction with his assertion, respondent argues the trial court erred in using the fact that he dissipated marital assets twice: first to counterbalance its finding that respondent was responsible for the accumulation of the parties' capital and then again to justify a weighted property distribution favoring petitioner.

As respondent concedes, the appellate standard of review is abuse of discretion, and "the question is not whether the reviewing court agrees with the trial court but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted." (*In re Marriage of Lee* (1979), 78 Ill. App.

3d 1123, 1127, 398 N.E.2d 126.) Section 503(c) directs the court to divide the parties' property in just proportions. In dividing the marital property, the court is obligated to consider all relevant statutory factors which would affect the fairness of the distribution. *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262.

Respondent contends, and petitioner does not dispute, that he received approximately 37% and petitioner 63% of the marital property. Illinois courts have upheld distributions awarding even larger percentages of marital property to one spouse. (See *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, *cert. denied* (1982), 456 U.S. 905, 72 L. Ed. 2d 162, 102 S. Ct. 1751; *In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1012-13, 462 N.E.2d 30, 37-38, and cases cited therein.) Respondent refers, however, to the statutory factors to buttress his conclusion that the trial court abused its discretion. His argument is unconvincing. The trial court found, and we agree, that respondent's contribution to the parties' asset accumulation was negated by his dissipation of these same assets. This fact justifies a larger award to petitioner (see *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151), even though, as respondent emphasizes, courts have found it equitable to apportion property accumulated during longer marriages in equal proportions. (See Ill. Ann. Stat., ch. 40, par. 503(d), Supp. to Hist. & Prac. Notes, at 53 (Smith-Hurd Supp. 1984-85). Petitioner established her monthly expenses to be $1,620, while respondent demonstrated he would only need $1,200 monthly. This factor also supports petitioner's larger award. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(7).) Each party established that he suffered from certain health problems, so this factor does not favor either party. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(7).) The larger award to petitioner is further justified by the trial court's stated intention to award her a large proportion of the assets so that she would not be dependent upon respondent for maintenance. (See Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(9).) The final relevant statutory factor—each spouse's reasonable opportunity for the acquisition and accumulation of capital assets and income (Ill. Rev. Stat. 1981. ch. 40, par. 503(c)(10))—clearly weighs in favor of the larger award to petitioner. Petitioner completed school only through the ninth grade and had not worked full-time outside the home since 1950. Despite the parties' significant real estate holdings, she further testified she did not fix, maintain or manage their real estate property. Therefore, her lack of work experience and education make unlikely her employment in more than an entry level position, and her inexperience in the real estate business would likely preclude her from profitably buying, renovating and selling

properties.

In contrast, the court found, and respondent concedes, that he was responsible for accumulating and managing the parties' substantial real estate portfolio. His experience and skills in renovating real estate established that he has the greater opportunity to acquire and accumulate assets and has greater income potential. As the trial court stated in awarding respondent a smaller percentage of the marital estate:

> "I think that Mr. Smith is being awarded a smaller segment of property I'm acknowledging the fact that in spite of what I think was his misappropriation of marital assets and his dissipation of marital assets to his benefit and completely against the benefit of Mrs. Smith that I am acknowledging the fact that Mr. Smith is an industrious and capable and intelligent individual who probably in the years to come will be able to reestablish himself. He's got enough to live on and probably enough to do exactly what he was doing before, which is rebuilding his estate."

Our review of the statutory factors convinces us that the trial court did not abuse its discretion in apportioning the larger percentage of property to petitioner, especially in light of its finding that respondent dissipated marital assets. See *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151 (trial court did not err in finding that husband had dissipated marital assets or in charging amount dissipated against husband's share of marital property); see also *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 453 N.E.2d 1357.

We also find unpersuasive respondent's argument that the court improperly used the dissipation criterion twice in apportioning the property. Respondent interprets too restrictively the court's authority. In apportioning the property, the court did "net out" respondent's contribution to and dissipation of the marital assets. The court did not, however, rely exclusively upon respondent's dissipation of assets to award a larger percentage to petitioner. The court also recognized her contribution as a homemaker, his greater opportunity to accumulate capital and earn income, her higher income needs, and the denial of maintenance to both parties. Furthermore, nothing in the statute or case law prevents the court from finding one factor especially significant in allocating the property to each spouse in just proportions. The property distribution here was in just proportions.

■ The final argument advanced by respondent is that the trial court abused its discretion in ordering him to pay one-half of petitioner's attorney fees. Section 508 of the IMDMA empowers the court

"after considering the financial resources of the parties" to order one spouse to pay all or a portion of the reasonable attorney fees and costs incurred by the other spouse in the maintenance or defense of any proceeding under the IMDMA. (Ill. Rev. Stat. 1981, ch. 40, par. 508(a)(1).) An award of attorney fees under section 508 "is justified when the party seeking relief demonstrates financial inability to pay coupled with the ability of the former spouse to do so." (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 845, 443 N.E.2d 1, 6.) However, financial inability is a relative term (*In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 407 N.E.2d 1045), and is not to be equated with destitution. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) Financial inability for purposes of awarding attorney fees in a divorce proceeding exists when payment of fees would strip the individual of his or her means of support and undermine his or her economic stability. (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 443 N.E.2d 1.) Even where a spouse is awarded sufficient marital property to pay her own fees, the other spouse can be ordered to pay them so that she is not required to deplete her capital assets. (*In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1132, 427 N.E.2d 1262, 1267.) The allowance of attorney fees is a decision resting within the sound discretion of the trial court, and a fee award will not be reversed on appeal unless an abuse of discretion is shown. *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 110, 468 N.E.2d 490, 495.

Applying these principles here, neither party was allocated significant liquid assets to satisfy petitioner's fees obligation. Petitioner was awarded life insurance valued at $3,500 and $2,923 in a savings account; respondent was awarded $3,500 in life insurance and $1,557 in a savings account. Petitioner had projected annual income of $33,000 and expenses of $19,440. Respondent had projected annual income of $16,800 and expenses of $14,400. Despite petitioner's greater investment income, three factors support the court's order requiring respondent to contribute toward payment of petitioner's fees. First, the record demonstrates that respondent paid $3,000 to his own attorney during the pendency of this proceeding from marital funds. Our calculation that defendant dissipated more than $50,000 in marital assets does not include this payment by defendant of $3,000 from marital funds to his attorney. Therefore, the trial court equalized the property distribution by ordering respondent to pay $3,500 toward her attorney fees obligation. Second, the trial judge specifically ordered respondent to pay one-half of petitioner's attorney fees because he didn't believe she should have to dissipate the marital assets to pay

the fees. Third, as acknowledged by the trial court, respondent had the better opportunity to accumulate assets. Since the parties are nearing their retirement age, the trial court recognized that petitioner must conserve the assets and income awarded her to meet her retirement needs.

> "I think the Court has relieved her of a substantial concern over her future financial security and I think that she's going to have to live within her means. She's going to have to set aside money for future years. I think with the income I've awarded her she should be able to establish a general savings plan, she should be able to establish IRA's she should be able to make some decent conservative investments."

Her need to conserve funds is made greater because she was denied maintenance and because her 20-year absence from the work force will likely mean that her entitlement to Social Security benefits will be modest. Her potential employment income until retirement also will be limited because of her age, and by her lack of educational background and work experience. These factors support the trial court's conclusion that petitioner was unable on a relative basis to pay all of her own attorney fees without depleting her capital assets. (See *Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 419 N.E.2d 924 (husband ordered to pay wife's attorney fees even though wife awarded alimony in gross of $500,000); *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321 (husband required to pay a portion of ex-wife's attorney fees even though she possessed $90,000 in liquid assets).) Based on these factors, the trial court's order requiring respondent to pay $3,500 of petitioner's attorney fees was not an abuse of discretion.

The order of the circuit court of Winnebago County is affirmed.

Affirmed.

SCHNAKE and REINHARD, JJ., concur.