*In re* MARRIAGE OF MIRJANA PETROVICH, Petitioner-Appellee, and MILAN PETROVICH, Respondent-Appellant.

Second District No. 2—86—0673

Opinion filed April 17, 1987.

UNVERZAGT, J., dissenting.

Kerry L. Kessler and Bernard W. Moltz, both of Moltz & Kessler, of Chicago, for appellant.

Lloyd E. Dyer, Jr., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Mirjana Petrovich, brought this action to dissolve her marriage to respondent, Milan Petrovich. The trial court dissolved the marriage and subsequently entered a supplemental judgment on March 5, 1985, disposing of all questions of property distribution. The respondent appeals from the entry of that supplemental judgment, as well as from the order entered by the trial court on June 27, 1986, denying his motion for post-trial relief. The respondent contends that the trial court erred in finding him guilty of dissipation of marital assets, in awarding practically all the marital property to petitioner, and in requiring him to pay 30% of the educational expenses of the coup-

le's daughter.

The parties were married on September 24, 1960. At the time of trial, petitioner was 60 years old and respondent was 58. The parties had one daughter, Helena, who was 19 years old and a college student at the time of trial.

During the marriage, petitioner had an active practice in psychiatry. Petitioner paid all the family bills from her income. In February 1983, petitioner was diagnosed as suffering from thrombocytic purpura, a disabling blood disease. She was hospitalized for six days. She returned to work in April 1983, but from September 1983 until March 1984 she was unable to work. Her practice diminished from a $70,000 to $80,000 level to a $35,000 to $45,000 level during the pendency of this action. In 1984, she claimed a $25,000 income and $25,000 in accounts receivable which she valued as uncollectible. At the time of trial, her practice was limited to seeing only a few patients, and she had been advised by her doctor to stop working completely.

Respondent was employed until 1971 as a project engineer for International Harvester. After his retirement in 1971, respondent stayed home in order to become a self-made investor.

The parties separated in 1979. Petitioner filed for dissolution of marriage on December 6, 1979. Trial commenced on October 19, 1984.

Petitioner testified that she gave to respondent over $368,000, which he invested in the stock market. He would tell petitioner to write checks, and she would comply. Respondent maintained exclusive control over the investment accounts and made all the decisions regarding the investments. He would tell petitioner how the stocks were doing only "depending on where she was available and when she was asking." She kept a ledger of the amounts she turned over to respondent for investment purposes. She ceased making payments to respondent for stock purchases approximately one year after they separated, in 1981. By May 1981, the value of their investments had risen to more than $2 million, a fact which petitioner was unaware of until May 1983. Though he requested that she remortgage the house for investment purposes in 1982, she refused. At trial, these holdings had dwindled to somewhere between $14,000 and $20,000. Respondent offered no evidence to show the accounts in which he had invested petitioner's money, and he did not account for the losses other than by stating that he made poor long-term investments.

Respondent admitted that after the separation he opened up accounts in his own name and he alone decided in which accounts he would place funds. None of these separate accounts were ever identified in his testimony or in discovery. (Respondent was likewise unable

to identify which stocks he had invested in during the marriage.) He also admitted that he took money out of accounts and placed it "in some other places," and that he received cash from the accounts "all the time."

Respondent testified to personally owning stocks worth a net value of approximately $15,000, his joint interest in the marital home, and some unvalued furniture and clothing. He claimed debts of approximately $30,250. His monthly expense was $800 per month.

Petitioner had assets in various forms. The marital home was valued at approximately $250,000. She also testified to having four cars, various savings and checking accounts, several brokerage accounts, and a deferred annuity, all totaling approximately $311,679.55. Petitioner stated that she had incurred approximately $20,694.64 in debts as of the time of trial.

In the supplemental judgment for dissolution of marriage, the trial court found that respondent had dissipated substantial marital funds exceeding $2 million. The court awarded the marital home and psychiatric practice to the petitioner. Three outstanding debts in the aggregate total of $22,000 were apportioned to petitioner. The court divided the substantial credit card debts between petitioner and respondent, making petitioner responsible for 70% of those debts. Petitioner was to be responsible for 70% of the daughter's expenses while attending college; respondent was responsible for 30%. Each party was responsible for their own attorney fees. Two cars were awarded to each party. The investment tax credit carry-overs were awarded to respondent, along with his stocks valued at approximately $15,000. Petitioner's retirement plan, valued at $5,000, was awarded to her. Maintenance was waived by the parties.

Respondent, in a post-trial motion, sought the court to vacate the judgment, make new findings, and redistribute the property more equitably. This motion was denied on June 27, 1986. Respondent filed his notice of appeal on July 23, 1986.

Respondent first contends that the trial court erred in finding that he dissipated assets of the marital estate. The trial court apportioned the bulk of the marital estate to petitioner partly because of its conclusion that respondent "has dissipated substantial marital funds in an amount exceeding two million dollars." Petitioner responds that the trial court's finding is supported by the record.

 Section 503(d)(1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides:

"In a proceeding for dissolution of marriage ***, the court shall assign each spouse's non-marital property to that spouse.

It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including: (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit." (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(1).)

Dissipation has been defined as " 'the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown' " (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1019, quoting Ill. Ann. Stat., ch. 40, par. 503(d)(1), Supp. to Historical & Practice Notes, at 57 (Smith-Hurd Supp. 1984-85)), but a finding of dissipation is possible even though the dissipating party did not derive personal benefit from the dissipation of the asset (128 Ill. App. 3d 1017, 1019; *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710). Whether a given course of conduct constitutes dissipation within the meaning of the Act depends upon the facts of the particular case. (*In re Marriage of Aslaksen* (1986), 148 Ill. App. 3d 784, 788.) The general principle is that a person charged with the dissipation is under an obligation to establish by clear and specific evidence how the funds were spent. General and vague statements that the funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1022.) The trial court's finding regarding the allocation of marital property, including making allowances for dissipation, will not be reversed absent an abuse of discretion. 128 Ill. App. 3d 1017, 1019.

■ It is uncontroverted that during the course of the marriage, petitioner gave respondent over $360,000 for investment purposes. While she kept a ledger of the checks which she wrote at the bequest of respondent, it was respondent who managed and directed all the investments. Petitioner had little or no knowledge as to what was being done with the stock and was unaware that it had risen to $2 million until two years after it had done so, two or three years after she had tendered her last check to respondent for investment purposes. By October 1984, only $15,000 remained. While respondent did testify that he used some of the funds to pay off certain loans and the mortgage on the marital residence, he offered no evidence to support this testimony. General statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. (128 Ill. App. 3d 1017, 1022.) Given these facts, a finding of dissipation was appropriate.

When examined by petitioner's counsel, respondent was completely unable or unwilling to explain the losses. He could not even answer what stock he invested most of the money in. While such losses could easily be established by the tendering of brokerage account transaction documents, respondent did not tender any physical or oral evidence to justify the claim of his losses. In light of the indefinite testimony of the respondent in this matter, unsupported by any form of receipts, brokerage accounts, or other documented explanation, we cannot say that the rejection by the trial court of respondent's explanation was unjustified.

Respondent next contends that the trial court erred in apportioning the marital property between the parties. By his calculation, he figures that the trial court awarded petitioner 92% of the property interests and that such a disproportionate award constitutes an abuse of discretion.

 Section 503(d) directs the court to divide the parties' property in just proportions. However, in dividing the property, the court is directed to consider "the contribution or dissipation of each party." (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(1).) An equitable award does not require that the marital estate be divided equally. (*In re Marriage of Caldwell* (1984), 124 Ill. App. 3d 898.) The trial court's distribution of marital property rests within its sound discretion and will not be disturbed absent an abuse of that discretion. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 30.) Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. 136 Ill. App. 3d 26, 30.

 ██ We reject respondent's calculations. He ignores the fact that the trial court found that petitioner's accounts receivable were, for the most part, uncollectible; that petitioner was apportioned the fixed liabilities of over $20,000; and that respondent was awarded the accrued tax benefits of his investment practices. Furthermore, there was evidence that since 1971, petitioner has been solely responsible for the support of the family. Each party's contribution in acquiring marital property is one factor to be considered in dividing the property. (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(1).) As we have already stated, the trial court properly found that respondent had dissipated over $2 million in marital funds. This also is to be taken into consideration by the trial court. (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(1).) While certain courts have deducted the full amount which a party has dissipated from his portion of the marital estate (see *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1), in the instant case, the marital estate is far less than the amount dissipated—even less than the amount

which petitioner originally gave respondent to invest. While we recognize that petitioner was awarded a highly disproportionate amount, in view of her substantial contribution to the marital estate and respondent's dissipation thereof, we find no abuse of discretion in the trial court's award.

Finally, respondent contends that the trial court's order requiring him to pay 30% of his daughter's college expenses is an abuse of discretion. We disagree.

■■ Section 513 of the Act directs the court to consider all relevant factors in making an award for the education and maintenance of a child, including:

"(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Ill. Rev. Stat. 1983, ch. 40, par. 513.)

In the instant case, the trial court ordered respondent to pay, at most, approximately $2,400 per year of his daughter's annual total college expenses of $8,000. We cannot say that this is an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

REINHARD, J., concurs.

JUSTICE UNVERZAGT, dissenting:

In this case, a board-certified medical doctor and spouse were married for 24 years and had one 19-year-old daughter, who was a college student. The doctor had made a high gross income of $80,000 and made a gross of just under $70,000 in 1983, the year prior to the hearing on property division. The spouse had not been employed outside the home since 1972. Since that date the spouse had taken care of the home, answered the phone for the doctor, checked invoices, and prepared their tax returns. At the time of the hearing both parties, who were around 60 years old, claimed ill health. The doctor maintained an expensive Oak Brook shopping center office, a billing service, an answering service, and was on the staff of Mercy Hospital, Good Samaritan Hospital, Glendale Heights Hospital, and had recently joined the staff of Loyola University Hospital.

After the hearing the trial judge awarded virtually all of the marital assets to the doctor. One is incredulous to accept the result.

The trial court based its lopsided division of property on its finding that the homebody spouse dissipated funds in excess of $2 million. The majority accepts this finding.

The trial court was incorrect in finding a dissipation of assets. The trial court displayed a basic misunderstanding of what it means to dissipate marital assets.

Dissipation of marital assets occurs when a spouse uses marital property for his own benefit for a purpose unrelated to the marriage while the marriage is breaking down. *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513.

The recent cases concerning the dissipation doctrine are instructive. *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, the court determined that there was no dissipation of marital assets where the money in question is spent for purposes which were necessary and appropriate, legitimate family expenses. The court found there was no evidence in the record that the money in question was spent for purposes unrelated to the marriage.

*In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, the court found that the husband had dissipated marital assets in cashing life insurance policies just prior to separation and withdrawing a large sum from a joint savings account following the separation of the parties.

*In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, the court found dissipation where the husband sold the parties' major long-term investment of jointly held securities, without accounting for the proceeds of sale.

Based upon these three cases, the husband in the case at hand cannot be guilty of dissipation of the marital assets worth $2 million.

The record is clear that the funds at issue were jointly invested by the parties. The husband did advise what investments to make. The husband did the tax planning for the parties and did it so that in many years, the wife testified, she was able to give over for investment a sum greater than she declared for income tax purposes. The wife kept a journal of funds she earned which were used for investment. Some 40 to 50 pages of this journal show that the wife made checks to brokers for the purchase of investments.

For this college-trained, board-certified psychiatrist to claim she was the unwitting Trilby to her homemaker husband's Svengali is ludicrous. She kept a journal of the investments. She wrote the checks to brokers for investments. Two years after she filed suit for divorce she was aware that the margin account they owned with Fidelity Brokerage Services, Inc., was valued at over $1 million. She was in suit; nonetheless, she never asked for an injunction to halt the investments

or any other court order to preserve the property. She was content at that time to ride out the gamble.

The margin account later rose to almost $4 million with a $2 million loan and then rapidly lost ground to less than $100,000. Both of the parties rolled the dice; both deserve to suffer the loss, and it is not fair to allocate all of the loss to the husband by the device of calling it a dissipation of assets.

For this error it is my opinion the rest of the property distribution is fatally skewed and the case should be sent back for another hearing.

I therefore dissent.