*In re* MARRIAGE OF FRANK R. GETAUTAS, Petitioner-Appellant, and DOROTHY A. GETAUTAS, Respondent-Appellee.

Second District   No. 2—88—1267

Opinion filed October 2, 1989.

David J. Letvin and David Mark Stein, both of Letvin & Stein, of Chicago, for appellant.

Mary K. Manning, of William J. Wylie & Associates, P.C., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Frank R. Getautas (Frank), appeals from a final order entered by the trial court dissolving his marriage to respondent, Dorothy A. Getautas (Dorothy). On appeal, Frank contends that the trial court erred in finding that (1) no dissipation of marital assets occurred; (2) Frank owed a child support arrearage of $717.39; and (3) Dorothy was entitled to maintenance of $350 per month for three years. We affirm in part and vacate in part.

As the parties are familiar with the procedural history of this case and the voluminous exhibits admitted at trial, we need only set forth that evidence pertinent to resolving each of the issues raised.

Frank and Dorothy Getautas were married in 1968. During their marriage, they had three children, all of whom were emancipated at the time of trial. Although married for 20 years, both parties agree that the marriage was a troubled one. Within the first 10 years of the marriage, Dorothy filed two petitions to dissolve the marriage. The first was filed in 1973 or 1974, and the second in 1977. She voluntarily dismissed both petitions.

In 1977, Dorothy went to work part time as a clerk in a hospital. A few years later, she began working full time at the hospital and has continued to do so at various hospitals, except for a period of time while she was laid off in 1984. In addition to her work at the hospital,

Dorothy began working for Frank's business in 1984 without pay. While working for him, her duties included opening the mail, receiving business checks, and making bank deposits on behalf of the business.

Frank has been employed at G & E Instruments, Inc. (G & E), since 1979. G & E is a close corporation engaged in the resale of industrial control instruments. Frank is the corporation's sole stockholder. While his income varies depending on the success of the business, the testimony revealed that he took home an estimated $2,000 a month during the marriage.

From the time they were married, Frank handled the financial affairs of the family penuriously. However, in 1981, Dorothy took over the family finances. Subsequently, the lifestyle of the family changed. Dorothy had a number of major improvements made to the marital residence; the children were enrolled in one of the best and most expensive private high schools in the area; gardeners and household help were employed; the children had orthodontia and dental surgeries; and the parties vacationed extensively.

Throughout the marriage there had been periods where the parties separated; however, they had always reconciled. In February 1986, after an argument with Frank, Dorothy left the marital residence and went to live with her family in Minnesota. Frank alleged that it was during this separation that he first discovered financial irregularities in their marital assets and in the accounts receivable at G & E. Frank testified that when he confronted Dorothy with the irregularities she gave no explanation as to where the money had been spent.

At Frank's request, Dorothy returned to the marital home in July 1986. Frank filed for dissolution in December 1986, and Dorothy moved out of the marital residence the following year. The parties executed a written waiver of the two-year separation requirement contained in section 401 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 401(2)). At an uncontested hearing in August 1988, the trial court found grounds for dissolution based upon irreconcilable differences.

A lengthy trial then ensued regarding the issue of property distribution. The trial court found that the marital property of the parties consisted of the following: (1) the marital residence in Naperville; (2) G & E Instruments, Inc.; (3) a 1981 Audi automobile; (4) a 1984 Trans Am Pontiac automobile; and (5) various household furnishings in the marital home. Further, the court found that Frank owned the following nonmarital property: (1) $8,500 worth of stock which he had to

sell in February 1986 to pay for bills and expenses of the parties during 1986 and 1987; and (2) a joint account with his mother. There was no evidence of marital monies having been placed into this account.

In its disposition of the marital estate, the court ordered, in pertinent part, that the marital residence be sold and the proceeds allocated first to reimburse Frank for the $8,500 of nonmarital property he had been forced to liquidate, with the remainder being allocated 60% to Dorothy and 40% to Frank. G & E Instruments, Inc., and the 1981 Audi were awarded to Frank, with Dorothy being awarded the 1984 Trans Am. The court ordered that the household furnishings be sold at public auction absent an agreement between the parties as to an equitable division. Additionally, the court ordered that Frank pay a child support arrearage in the amount of $717.39 and pay Dorothy maintenance of $350 per month for three years.

In distributing the marital property, the trial court specifically found that Dorothy had not dissipated any marital assets. This finding was made despite numerous exhibits presented by Frank in attempting to show that Dorothy liquidated nearly $150,000 by closing many of the parties' bank accounts and cashing checks made payable to G & E without his knowledge. The court found that virtually all of the alleged acts of dissipation occurred prior to the irreconcilable breakdown of the marriage and, further, that Dorothy had not used any marital funds for purposes unrelated to the marriage. Frank filed this timely appeal.

■■■ Section 503(d)(1) of the Act provides:

"In a proceeding for dissolution of marriage *** the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit." (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)(1).)

Dissipation of marital assets occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time when the marriage is in serious jeopardy or undergoing an irreconcilable breakdown. (*In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 886; *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 31.) Whether a given course of conduct constitutes dissipation depends upon the facts of each case. (*In re Marriage of Westcott*

(1987), 163 Ill. App. 3d 168, 174.) The trial court's finding that no dissipation occurred will not be reversed on appeal absent an abuse of discretion. (*Petrovich*, 154 Ill. App. 3d at 886.) An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court. *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 31.

At trial, Dorothy admitted to closing many of the parties' bank accounts and cashing checks made payable to G & E. However, the trial court found that the assets in question were not dissipated. The basis for the court's finding was twofold. First, virtually all of the alleged dissipation occurred prior to the irreconcilable breakdown of the marriage; and second, Dorothy had not used any marital funds for purposes unrelated to the marriage.

By its very definition, dissipation occurs after the marriage is irreconcilably broken down. The trial court found that the breakdown occurred in the latter months of 1986, either in November or December. Frank contends that the court erred in this finding and argues that the breakdown occurred in 1979, or at least by 1984.

■ We do not believe that the trial court abused its discretion in the instant case. As to the factual history and breakdown of the marriage, the court had to base its finding upon scant testimony presented at trial. That testimony revealed that the marriage was a troubled one precipitated in great part by the differing attitudes of the parties with respect to the expenditures of marital funds. While there had been periods of separation throughout the marriage, the parties had always reconciled. Indeed, upon Frank's request, Dorothy returned home after the February 1986 separation. It was not until December 1986 that Frank filed for dissolution. While it is possible to find an irreconcilable breakdown prior to commencement of dissolution proceedings (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1019), there is no indication that such finding is warranted here.

■ The second basis for the trial court's holding of no dissipation was the finding that no marital funds were used for purposes unrelated to the marriage. The point of inquiry is that period of time after the marriage has irreconcilably broken down. The party who is charged with dissipation is under an obligation to establish by clear and specific evidence how those funds were spent. (*In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 886; *Smith*, 128 Ill. App. 3d at 1022.) General and vague statements that the funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. (*Petrovich*, 154 Ill. App. 3d at 886; *Smith*, 128 Ill. App. 3d

at 1022.) However, whether a given course of conduct constitutes dissipation depends upon the facts of each case. *In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 174.

■ In the case at bar, the marriage suffered an irreconcilable breakdown in November or December 1986. Dorothy admitted that subsequent to this time she took an early distribution of an IRA for a little over $200 and sold a piano to buy Christmas gifts. Although she gave no specific accounting as to the disposition of these assets, other than to say that she spent the money on herself and the children, the trial court found this to be sufficient under the circumstances. We agree. Given the nominal amount in question and the difficulty in proving the expenditures made with this amount, we find that Dorothy sustained her burden and sufficiently established how the funds were spent.

Frank contends that the trial court's inquiry is not limited to that period of time after the irreconcilable breakdown of the marriage. We note the recent case of *In re Marriage of O'Neill* (1989), 185 Ill. App. 3d 566, wherein the court repudiated any ruling that says dissipation is limited in time to conduct which takes place during an irreconcilable breakdown of the marriage. We respectfully reject the holding in *O'Neill*.

In *O'Neill*, the court determined that payment of an attorney fee in defense of prosecution for a criminal offense was dissipation although the evidence did not indicate that the marriage was undergoing an irreconcilable breakdown at the time of the expenditure. *O'Neill*, 185 Ill. App. 3d at 567-69.

■ This ruling calls into issue every expenditure and economic decision from the moment the wedding vows are pronounced. We do not believe that by enacting section 503(d) of the Act, the legislature intended to cause the courts to become auditing agencies for every marriage that falters. The court's reference in *O'Neill* to "extravagant purchases of clothing" indicates how easily the dissipation issue could be raised. *O'Neill*, 185 Ill. App. 3d at 569.

The ramifications of the *O'Neill* opinion are apparent when one considers the burden of proof applied to dissipation cases. While *O'Neill* did not address the burden of proof, the general principle is that a person charged with dissipation is under an obligation to establish by clear and specific evidence how the funds were spent. (*Petrovich*, 154 Ill. App. 3d at 886; *Smith*, 128 Ill. App. 3d at 1022.) Under *O'Neill*, each party would have to keep records of *all* expenditures made from day one, and the court would have to audit their affairs and make a parting adjustment. There is enough strain

on the marriage relationship and the courts' docket without causing the courts to be confronted with having to consider this large amount of time-consuming evidence.

With the advent of detailed discovery, the cost of dissolution proceedings has skyrocketed. Allowing lawyers, or possibly requiring them under a threat of malpractice, to question all expenses and economic decisions of a 20-year marriage (as we have before us) in the hope of uncovering something that could be called dissipation adds an unnecessary and wasteful burden of time and expense especially when no initial triggering event or threshold has been crossed. The relatively few dissipation cases now seen by this court would mushroom given the ease by which a party could allege extravagant purchases of clothes, cars, furniture, golf clubs, et cetera in nearly every dissolution case. It should not be the trial court's role to account for the various financial inequities found in a "bad" marriage or bad business decisions, and the court should not be required to consider allegations of "extravagant purchases" prior to the irreconcilable breakdown of the marriage.

"Dissipate" means "[t]o destroy or waste, as to expend funds foolishly." (Black's Law Dictionary 425 (5th ed. 1979).) The criminal act in *O'Neill* may have been foolish, but to defend oneself from prison is not foolish but reasonable. We respectfully decline to follow *O'Neill.*

■ While the trial court's holding in the case at bar was in accord with ours, it further provided as a matter of record that Dorothy's spending even prior to the breakdown of the marriage was done for marital purposes. The trial court found that the money in question was used to pay for household items, repairs, improvements, entertainment and expenses for the mutual benefit of both parties and their children and to support all of them in the lifestyle Dorothy felt was necessary for the family to which Frank did not object. Although Dorothy could not recall which accounts had been used for which expenditures, nor could she recall the exact cost of many of the expenditures, the trial court found, and we agree, that the explanations provided were sufficiently detailed to find that the funds were used for marital purposes.

Frank contends that it was not until February 1986 that he became aware of the fact that Dorothy was depleting the family savings and cashing G & E checks. The trial court found that Frank's testimony was not credible. Determinations regarding credibility made by the trial court will not be disturbed unless manifestly against the weight of the evidence. *In re Marriage of Los* (1985), 136 Ill. App. 3d

26, 32; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100.

There is sufficient evidence in the record to support the court's finding. Given the income of the family, there was no way that the family's style of living could be financed through any means other than the depletion of the family's savings. The types of expenditures which Dorothy testified as to having made were ones which Frank could not help but have noticed. Further, G & E is a close corporation of which Frank is the sole stockholder. It is doubtful that he would not periodically review the financial affairs of his business. The above facts support the trial court's finding that the expenditures were made for marital purposes, and, thus, the trial court did not abuse its discretion in so finding.

The second issue raised on appeal is whether the trial court's finding of a child support arrearage in the amount of $717.39 should be vacated.

On December 2, 1987, an order was entered calling for Frank to pay Dorothy $239.13 on the first and 15th of each month commencing December 15, 1987, until further order of court. While entitled an "Agreed Order," it does not contain the signature of either Frank or his attorney.

On December 31, 1987, the trial court entered an order entitled "Support Order" which calls for semimonthly payments of $239.13 on the first and 15th of each month commencing January 1, 1988, and ending June 15, 1988. The order further provides, "[a]rrearage of $239.13 on Order entered December 2, 1987 is payable through the clerks office eff. 12/15/87."

On September 8, 1988, the trial court found there was a $717.39 arrearage and ordered Frank to pay it. The trial court reiterated its finding in the final judgment entered December 7, 1988. On appeal, Frank argues that he is not obligated to make the December 15, 1987, payment because neither his signature nor his attorney's signature appears on the "Agreed Order." The record supports Frank's contention that he did not approve the order. In addition, the record does not indicate that Frank received notice of the order, or that he was present when it was issued. Because the "Agreed Order" does not appear to have been approved by Frank, it cannot be enforceable as against him. (*First State Bank & Trust Co. v. Stackler* (1981), 93 Ill. App. 3d 619, 623.) Therefore, we find that the trial court erred in relying on the order in determining the amount of arrearage. Specifically, the court erred in adding the $239.13 December 15, 1987, payment to the amount it found Frank owed.

Frank further contends that he is not obligated to make the two

payments that were due in June 1988 under the support order. As a basis for his contention, Frank argues first that the "Agreed Order" entered December 2, 1987, was not by itself effective to continue the support obligation beyond May 18, 1988, the date upon which the Getautas' youngest two children became emancipated. Second, he alleges that the December 31, 1987, support order setting the June 15 end date was entered without any notice to himself or his attorney and, therefore, is unenforceable.

■ Because we have already found the agreed order to be unenforceable, we need only address Frank's second argument. After reviewing the record, we find no evidence to indicate that Frank was given notice prior to the entry of the support order of December 31, 1987, nor does Dorothy allege that notice was in fact given. This court has held that prior to the entry of a new order, a party must give notice that a motion will be presented to the court and that, absent such notice, the order is void. (*Vortanz v. Elmhurst Memorial Hospital* (1989), 179 Ill. App. 3d 584, 590; *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 881.) Since Frank did not receive notice of the support order, that order was void. By relying on the void order in determining the amount of the arrearage, we believe that the trial court abused its discretion in ordering Frank to pay the support arrearage. Thus, we find that the trial court erred in its ruling as to child support and hold that there is no outstanding child support arrearage.

The third issue raised on appeal is whether the trial court erred in awarding maintenance to Dorothy in the amount of $350 per month for a period of three years. The propriety of a maintenance award, as well as the granting of such an award, are matters within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Aslaksen* (1986), 148 Ill. App. 3d 784, 790.

■ Under section 504(a) of the Act, a trial court may grant maintenance if it finds that the spouse seeking maintenance (1) lacks sufficient property to provide for his or her reasonable needs, (2) is unable to support himself or herself through appropriate employment, or (3) is otherwise without sufficient income. (Ill. Rev. Stat. 1987, ch. 40, par. 504(a).) The amount and duration of a maintenance award is to be determined after considering all relevant factors, including: (1) the financial resources of the party seeking maintenance; (2) the time necessary to acquire sufficient education or training to enable a party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the mar-

riage; (5) the age and the physical and emotional condition of both parties; (6) the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance; and (7) the tax consequences of the property division upon the respective economic circumstances of the parties. (Ill. Rev. Stat. 1987, ch. 40, par. 504(b); *Aslaksen*, 148 Ill. App. 3d at 790.) The trial court is to establish on the record the basis for the maintenance award. *Aslaksen*, 148 Ill. App. 3d at 790.

In the case at bar, the trial court noted that Frank has a degree in electrical engineering and has operated his own business for a number of years. He was found to be in good health and has demonstrated throughout the years an ability to generate an income more than adequate to support himself.

In comparison, the trial court noted that while Dorothy had some college education, she has worked in entry level jobs throughout the marriage. Thus, it was found that her ability to earn a living is limited to the type of employment she now has absent some further training. As a result, the trial court found that Dorothy has a much more minimal opportunity for the acquisition and accumulation of capital assets than Frank.

We believe that the above facts constitute a sufficient basis for the trial court's award of maintenance. The trial court properly considered the statutory factors set forth in section 504(b) of the Act and made a just finding. Frank has cited no cases which would lead us to a contrary conclusion. Therefore, we agree with the trial court's ruling with respect to the award of maintenance.

For the reasons stated, that portion of the trial court's judgment finding that Frank owed a child support arrearage of $717.39 is vacated; the remainder of the judgment is affirmed.

Affirmed in part; vacated in part.

REINHARD and McLAREN, JJ., concur.