*In re* MARRIAGE OF RUTH ANN HAZEL, Petitioner-Appellant, and CHARLES ROBERT HAZEL, Respondent-Appellee.

Fifth District  No. 5—90—0186

Opinion filed October 8, 1991.

Theodore Van Winkle and James L. Van Winkle, both of Van Winkle & Van Winkle, of McLeansboro, for appellant.

Morris Lane Harvey, of Fairfield, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Petitioner, Ruth Ann Hazel, filed a petition for dissolution of marriage against Charles Robert Hazel on June 1, 1988. After the first stage of the hearing, the trial court entered a judgment dissolving the marriage. Following the second stage of the hearing, the court entered an order holding that the marriage was not undergoing irreconcilable breakdown prior to 1988, thereby precluding a finding of dissipation occurring before that point. The issue before this court is whether the trial court's finding that the marriage was not undergoing irreconcilable breakdown before 1988 was an abuse of discretion. For the reasons which follow, we hold the circuit court did not abuse its discretion. We, therefore, affirm.

Ruth Ann Hazel and Charles Robert Hazel were married on April 23, 1961. Three children were born to the marriage with one

still living at home at the time of the final hearing. The marriage, like many, had problems. Petitioner alleged acts of gambling, drinking, loafing, and wasting of marital assets on the part of her spouse. Mrs. Hazel testified that her husband began gambling in 1980 and trapshooting in 1984. Respondent estimated his trapshooting expenses at $2,000 per year. In 1984 the couple's farming operation suffered a loss in excess of $34,000. The farm had shown yearly net profits prior to and subsequent to the 1984 loss. Mrs. Hazel testified that in 1985 she consulted an attorney concerning a divorce, but no action was taken. She also claimed that at this time Mr. Hazel told her he did not love her, that he intended to enjoy himself, and for her to find another man. In 1986 the couple went to a marriage counselor. Mr. Hazel periodically maintained a separate post office box and handled the bank account and books in the two years preceding dissolution. Counsel for respondent acknowledged that the marriage began undergoing an irreconcilable breakdown by January 1, 1988. The parties had never physically separated and lived together continuously until June of 1988 when the instant petition for dissolution was filed. The parties engaged in a sexual relationship on an average of four to five times a month up until the June 1988 filing. Mrs. Hazel alleged dissipation of marital assets on the part of Mr. Hazel which dated back to at least 1984.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act sets forth the factors to be considered when distributing marital property, including:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit." Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(1).

Dissipation refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing irreconcilable breakdown. *In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 497, 563 N.E.2d 494, 498; *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 886, 507 N.E.2d 207, 210.

Petitioner argues that use of the term "undergoing" suggests that an irreconcilable breakdown may be viewed as a prolonged gradual process extending from the initial signs of trouble in a marriage until the actual breakdown itself. To adopt the meaning proposed by the petitioner would require courts to examine every argument or conflict in the marriage from the moment vows are

exchanged to the date of dissolution to determine if such an event was in fact the moment at which the marriage began undergoing irreconcilable breakdown. Such a finding would defeat the holding of the Illinois Supreme Court in *O'Neill.*

A person charged with dissipation has the burden of establishing by clear and specific evidence how the funds in question were spent. (*Petrovich*, 154 Ill. App. 3d at 886, 507 N.E.2d at 210.) To require every expense and economic decision of a 27-year marriage to be explained by clear and specific evidence, without requiring some demonstration that a threshold has been crossed, adds an unnecessary and wasteful burden of time and expense. (*In re Marriage of Getautas* (1989), 189 Ill. App. 3d 148, 154-55, 544 N.E.2d 1284, 1288.) The legislature did not intend to make the courts auditors for every marriage that fails. *Getautas*, 189 Ill. App. 3d at 154, 544 N.E.2d at 1288.

The trial court established the date of January 1, 1988, as the point at which the marriage began undergoing irreconcilable breakdown and found no dissipation on the part of the respondent. The trial court's findings concerning the allocation of marital property, including findings for and against dissipation, will not be reversed absent an abuse of discretion. (*Petrovich*, 154 Ill. App. 3d at 886, 507 N.E.2d at 210.) The question, in determining whether the trial court abused its discretion, is whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. (*In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898.) Respondent conceded that by January 1, 1988, the marriage was undergoing irreconcilable breakdown. Petitioner claims, however, that the process began much earlier. While petitioner lists incidents and conflicts which in retrospect may appear to mark the beginning of a gradual process culminating in marital breakdown, they cannot be said to display a marriage inevitably headed for breakdown. Thus, they cannot be said to signal the start of the process "undergoing irreconcilable breakdown." Prior to June 1988, petitioner had never filed for dissolution nor had the parties ever physically separated. Mrs. Hazel testified that the couple would always reach a point when things would go back the way they had been prior to the altercation. The parties continued to engage in a sexual relationship until the filing for dissolution in June of 1988. While such a marriage may not have been a happy one, the trial court's finding that the marriage of the parties was

not undergoing irreconcilable breakdown prior to 1988 was not an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HARRISON and HOWERTON, JJ., concur.