*In re* MARRIAGE OF ROBERT LORD, Petitioner and Counterrespondent-Appellant, and ARLENE LORD, Respondent and Counterpetitioner-Appellee

Second District   No. 2—83—0505

Opinion filed June 20, 1984.

Richard L. Lucas, of Addison, and Ann S. Kenis and Marilyn F. Longwell, both of Kerr & Longwell, of Chicago, for appellant.

Dann Duff, of Loftus, Riggs, Redmond & Duff, Ltd., of Addison, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Robert Lord appeals from a supplemental judgment entered in a dissolution-of-marriage proceeding. He contends that the trial judge abused his discretion in reserving maintenance until March 1985, erred in distribution of the marital property, and erred in ruling on attorney fees.

I

A preliminary question, which has not been raised by the parties, is whether the judgment reserving maintenance is appealable. Our analysis of the recent supreme court case of *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, is central to this.

*Leopando* decides that only a single claim is presented in a proceeding for dissolution of marriage; and that other issues such as custody, property disposition, maintenance, support, and attorney fees, are not separate claims, but rather interrelated issues which are merely ancillary to the cause of action. 96 Ill. 2d 114, 119.

The supplemental decree entered here on April 28, 1983, found, based on medical testimony, that Arlene Lord has consistently shown symptoms of Raynaud's disease, and that she "might develop a disabling collagen disease within ten (10) years of the initial symptom and that this disease, if it is to occur, should be apparent by 1985." The court found that if she did develop the disease the amount of marital property assigned to her would not be adequate to support her without assistance from Robert Lord. Based on these findings the court ordered:

> "That maintenance for ARLENE LORD is reserved and may be set in the future if she shall be found within the time from entry of Judgment until March, 1985, to be suffering from a known collagen disease or other potentially disabling condition resulting from or associated with Raynaud's disease or Raynaud's phenomena."

The reservation of maintenance has statutory authority based on the agreement of the parties or motion of either party and a finding by the court that appropriate circumstances exist. (Ill. Rev. Stat. 1983, ch. 40, par. 401(3); see also *In re Marriage of McNeely* (1983), 117 Ill. App. 3d 320, 329.) While the authority to reserve issues does not directly speak to finality and appealability, we consider that it does so indirectly. Where jurisdiction is appropriately reserved, the public policy against fragmented litigation referred to in *Leopando* (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119-20)

will not be significantly undercut by granting finality to the judgment. (*Cf. In re Marriage of Parks* (1984), 122 Ill. App. 3d 905, 908.) In *Parks,* the trial court resolved all issues over which it had *in personam* jurisdiction. The fact that it reserved substantial issues, including distribution of property, maintenance and child support, which it lacked personal jurisdiction to adjudicate, was held to distinguish *Leopando,* and the judgment was found to be final and appealable.

■ We perceive a parallel policy here. The reservation of jurisdiction here was neither arbitrary nor designed solely for convenience, but was motivated by a legitimate concern for Arlene's circumstances which may not have been able to be dealt with in any other manner. As in *Parks,* the circumstances of this case are also unique. There is a finding that a party has organic symptoms of a disease which may or may not manifest itself in a disabling disease, but that question is determinable, based on expert medical testimony, within a certain period of time. Implicitly, the trial court is finding that no maintenance is justified under the present circumstances but that if the condition develops the distribution of property would be inadequate to protect the wife. If properly based, the trial court's decision would appear to be the wise one. On the other hand it would be extremely unfair to the husband, should the order be shielded from appellate review for a considerable period of time if, in fact, the court's discretion has not been properly exercised.

In *Leopando,* the appeal of questions of custody was protected by Supreme Court Rule 306(a)(1) (87 Ill. 2d R. 306(a)(1)), providing for application for leave to appeal from interlocutory custody orders. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 118.) Here, absent our resolution in favor of the appealability of the order reserving maintenance, there is no apparent avenue for interlocutory appeal, as judgments for dissolution which reserve some issues do not fall within the scope of the provision for review of interlocutory orders under *Leopando,* since no multiple claims are involved. See 87 Ill. 2d Rules 306-08.

It should also be noted that in *Leopando* only one issue, custody, was resolved. Here, only one issue was reserved and the policy against piecemeal appeals is not so severely impacted. In effect, there was a final conclusion on the present lack of need of maintenance and retention of jurisdiction to modify the decree and to award maintenance if the known symptoms developed into a debilitating disease. The substance of the judgment was to decide fully that which could fairly then be decided.

For these reasons we conclude that *Leopando* is distinguishable,

and that the judgment is final and appealable.

## II

On the merits, we conclude that the trial court's ruling is an appropriate exercise of the court's discretion.

The determination as to the necessity for an award of maintenance is a matter left to the discretion of the trial court, and the court's decision is not to be set aside unless it is against the manifest weight of the evidence. (*In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 381.) The court may grant maintenance only if it finds that the spouse seeking the award lacks sufficient property to provide for his or her own reasonable needs and is unable to support him or herself through appropriate employment or is otherwise without sufficient income. (Ill. Rev. Stat. 1983, ch. 40, par. 504; *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 296-97.) Here, Arlene was employed as a secretary, with net monthly income of less than $1,000. Monthly expenses for Arlene and the children were $1,768. The deficit would be largely, if not completely, met by child support payments of $400 per month and monthly payments of approximately $400 from a land contract awarded to the wife. Thus, the trial court could have legitimately concluded that Arlene was not entitled to receive maintenance currently, especially if she received substantial marital property and was not requesting current maintenance.

■ However, as previously noted, there was legitimate doubt as to Arlene's ability to support herself in the future. Arlene had been hospitalized in April 1981 for further testing, showing a positive RF factor, and markedly positive results on an ANA test, which is described as extremely accurate for diagnosing collagen diseases and specific for systemic lupus erythematosus. However, since such results could also be obtained due to other diseases, as of April 1981, the doctor was unable to diagnose a specific collagen disease. Arlene returned to the hospital in January of 1982 and the enlargement of her lymph nodes and spleen was consistent with collagen disorders. The difference in results of testing as opposed to the April 1981 test also suggested that the process was increasing. Yet the test results could have been due to other conditions. While the doctor was unable to make a definite diagnosis of a collagen disorder, he continued to have a high degree of suspicion that Arlene had a collagen disease and was of the opinion that she would develop the disease within the next 18 to 24 months so that the court could then be better informed as to her medical condition. We conclude that under these circumstances the trial court's decision to reserve maintenance was proper.

## III

The husband has also contended that the trial court erred in its distribution of marital property. The total value of the property awarded to Arlene amounted to $130,700, representing approximately 60% of the property divided between the parties. The total amount of marital property awarded to Robert was $61,500, approximately 32% of the property divided between the parties. The savings accounts were divided evenly.

Particularly in dispute by the husband is the court's finding that he had dissipated marital assets in cashing life insurance policies with proceeds of $13,900 just prior to separation, and in withdrawing $16,000 from a joint savings account, following the separation of the parties. The trial court could properly deny credibility to Robert's testimony that he had used the insurance proceeds to pay a $12,000 debt to another, whom he had not mentioned either in his deposition testimony or in his answers to Arlene's interrogatories. The court could also deny credibility to Robert's explanations of how he had used the balance of the money. The court's calculations as to the amount dissipated were within the range of the evidence. Under these circumstances the trial court did not err in finding that Robert had dissipated marital assets and in charging the amount dissipated against Robert's share of marital property so as to compensate Arlene. *In re Marriage of Block* (1982), 110 Ill. App. 3d 864-71.

The differing portions of property awarded to the parties also was not an abuse of the court's discretion, viewing the entire record. It is significant that Arlene, who is a secretary and earns less than $1,000 a month, has less opportunity for future acquisition of assets than does Robert, an architect whose income has typically been substantial. (See *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37-38.) Especially given the 24-year duration of the marriage and Arlene's contributions as a homemaker and her gratuitous services in her husband's business, there is adequate support for the property disposition.

## IV

While Robert has questioned the portion of the court's order granting Arlene $7,200 from a $17,209 marital savings account, the balance to be divided equally between the parties' attorneys for attorney fees, we find no error. In effect, the ruling was one which required each spouse to pay the fees for his or her own attorney. There is no showing on the record before us that the fees were not reasonable. Moreover, Robert has waived his right to a hearing on attorney

fees, as there is no indication that he ever requested such a hearing before the trial court. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 466.) The judge, who presided over the trial and was familiar with the attorneys' work, did not abuse his discretion in awarding fees without a hearing. 100 Ill. App. 3d 452, 466.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and HOPF, JJ., concur.