# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***In re Marriage of Jensen*, 2013 IL App (4th) 120355**

---

| | |
|---|---|
| Appellate Court Caption | In re: the Marriage of ELIZABETH H. JENSEN, Petitioner-Appellee, and PHILLIP M. JENSEN, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0355 |
| Filed | May 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In marriage dissolution proceedings where the trial court reserved the issue of maintenance, the appellate court lacked jurisdiction to consider respondent's appeal alleging that the trial court abused its discretion in allocating petitioner 55% of the marital estate and that it erred in finding that respondent dissipated $14,000 in marital assets, since the trial court's order was not final for purposes of appeal. |
| Decision Under Review | Appeal from the Circuit Court of Coles County, No. 09-D-134; the Hon. Teresa K. Righter, Judge, presiding. |
| Judgment | Dismissed. |

| | |
|---|---|
| Counsel on Appeal | Brian L. Bower, William A. Sunderman (argued), and Madison Mullady, all of Brainard Law Offices, of Charleston, for appellant. |
| | Mark E. Ferguson and Jay W. Ferguson (argued), both of Law Office of Mark E. Ferguson, Ltd., of Mattoon, for appellee. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion. Presiding Justice Steigmann and Justice Pope concurred in the judgment and opinion. |

## OPINION

¶ 1    In January 2011, the trial court entered an order dissolving the marriage of petitioner, Elizabeth H. Jensen, and respondent, Phillip M. Jensen. Following an August 2011 hearing, the court allocated the parties' various assets, including a $327,950 investment retirement account (IRA) with Richard, Merrill & Peterson, held in Phillip's name. In May 2012, the court modified its original order, (1) finding Phillip dissipated approximately $14,000 in marital assets, and (2) increasing the amount of the IRA awarded to Elizabeth from 50% to 62%.

¶ 2    Phillip appeals, arguing the trial court (1) abused its discretion by allocating approximately 55% of the total marital estate to Elizabeth, and (2) erred by finding Phillip dissipated approximately $14,000 in marital assets.

¶ 3    Because we conclude we do not have jurisdiction to address Phillip's contentions, we dismiss the appeal.

¶ 4                              I. BACKGROUND

¶ 5    Elizabeth and Phillip married on May 26, 1987. The parties had three children during their marriage.

¶ 6    A. The Trial Court's Temporary Orders and Judgment of Dissolution of Marriage

¶ 7    In June 2009, Elizabeth filed a petition for dissolution of marriage and a petition for temporary relief. In September 2009, the trial court entered a temporary order requiring Phillip to pay $2,600 biweekly as unallocated maintenance and support. The court subsequently modified the temporary order in November 2010, ordering bimonthly child support payments of $1,553.25. In April 2011, the court granted, in part, Phillip's petition for termination of support and maintenance, staying Phillip's maintenance obligation.

¶ 8    In January 2011, the trial court entered a judgment of dissolution of marriage, reserving

the resolution of "[a]ll other issues including those of maintenance and property allocation" for a subsequent hearing.

¶ 9                                    B. The August 2011 Hearing

¶ 10    In August 2011, the parties appeared for a hearing on all remaining issues. Phillip testified that from 1987 through 1991, he pursued postgraduate dentistry training in Chicago, Illinois. During this time, Elizabeth helped support the couple through her employment as a physical therapist. In 1989, the parties' oldest child, Matthew, was born.

¶ 11    Following the completion of Phillip's postgraduate training, the couple moved to Portland, Oregon, where Phillip became employed at Kaiser Permanente. The parties' second child, Mary, was born in 1992. Thereafter, the parties agreed Elizabeth should take care of the children and Phillip subsequently became the family's sole financial provider. In 1993, the family returned to Illinois, and Phillip became employed at an oral surgery practice in Coles County. The couple's youngest child, Sarah, was born in 1996.

¶ 12    In 1997, the Jensens decided Phillip would open a private oral surgery practice in Neoga, Illinois. Together the couple "did what was required to get that office up and running," with Elizabeth working at the front desk "[o]n a temporary basis." Elizabeth was also primarily responsible for taking care of the couple's children. In 2003, Phillip opened another office in Effingham, Illinois.

¶ 13    From June to September 2008, Phillip discontinued his oral surgery practice to seek treatment for his addiction to pain medication. In March 2009, Phillip suffered a relapse. In April 2011, the Illinois Division of Professional Regulation suspended Phillip's professional license. Phillip testified he was "actively seeking" to have his license reinstated.

¶ 14    Elizabeth testified she resumed employment in July 2008 as a physical therapist in Mattoon, Illinois. Approximately two years later, she began experiencing numbness in her hands and pain in her wrists. She also experienced discomfort in her lower back. At the time of trial, Elizabeth continued to receive treatment for these conditions.

¶ 15    The trial court admitted into evidence Phillip's 2008, 2009, and 2010 corporate tax returns, as well as the couple's 2008 and 2009 joint returns and their 2010 individual returns. In 2008, Phillip's oral surgery practice reported approximately $610,000 in gross receipts, and the Jensens reported combined personal income of approximately $320,000. In 2009, Phillip's practice reported gross receipts of over $760,000, and the Jensens reported combined personal income of approximately $340,000. In 2010, Phillip's practice reported gross receipts of over $650,000. That year, Phillip earned over $200,000 in personal income, and Elizabeth earned approximately $130,000 in income, which included the $60,000 she received in maintenance. The court also admitted into evidence a 2009 financial statement the parties had submitted to a bank in which they valued Phillip's oral surgery practice at approximately $1 million.

¶ 16    Elizabeth's amended financial affidavit, filed in April 2011, showed Elizabeth's total average estimated monthly expenses totaled over $10,000. Phillip's financial affidavit, filed in August 2011, reflected average estimated monthly expenses of approximately $2,000.

¶ 17     At the time of the hearing, the couple's oldest son, Matthew, was studying at the Missouri University of Science and Technology in Rolla, Missouri. According to Matthew, his school tuition and room and board expenses during the first two years were paid from a Uniform Gift to Minors account. Phillip had not made any other contributions toward Matthew's post-high-school educational expenses.

¶ 18     Phillip and Elizabeth's middle child, Mary, had just completed her first year at Murray State University. The Uniform Gift to Minors account paid for Mary's tuition, fees, and residence hall costs. Phillip stated the tuition for Mary's second year would also be paid from the Uniform Gift to Minors account. Mary also worked part-time. Mary testified Phillip had not made any other contributions to her post-high-school education. Both Matthew and Mary worked part-time and stated they relied on Elizabeth for partial support for their living and educational expenses. The couple's youngest child, Sarah, was a high school student at the time of the hearing and resided with Elizabeth.

¶ 19     In June 2009, Phillip began a relationship with Sarah Tobias. Phillip testified he separated from Elizabeth in July 2009, after she filed a petition for dissolution of marriage. The trial court admitted into evidence petitioner's exhibit No. 12, a three-page statement from Phillip's checking account, which showed Phillip had written checks to Tobias in December 2009, October 2010, and December 2010, totaling $5,650. The court also admitted into evidence petitioner's exhibit No. 13, showing Phillip had written two $4,000 checks to Giganti & Giganti in October and November 2010. Phillip testified he used these checks to purchase an engagement ring for Tobias.

¶ 20               C. The Trial Court's August 2011 Memorandum Opinion

¶ 21     In its August 23, 2011, memorandum opinion, the trial court awarded Elizabeth sole possession of the marital home until the home could be sold, requiring Phillip and Elizabeth to each pay half of the monthly mortgage payment, home equity payment, property taxes, and insurance. The court ordered the proceeds from the sale of the home to go to the costs of the sale, followed by the home equity and the mortgage. The court stated it was "impossible" to place a value on the marital residence, but noted the listing price had been reduced from $585,000 to $465,000, and the debt owed on the original mortgage and home equity loan totaled approximately $389,000. The court ordered any remaining funds or deficiency to be divided 60% to Elizabeth and 40% to Phillip. The court also ordered the couple's timeshare to be sold, with the parties to split the loss or gain from the sale equally.

¶ 22     With respect to the parties' retirement accounts, the trial court awarded Elizabeth the property from her 403(b) retirement account, valued at approximately $162,000, which contained the money Elizabeth had rolled over from her former IRA account with Richard, Merrill & Peterson. The court also awarded Elizabeth 50% of the $327,950 in the IRA account with Richard, Merrill & Peterson in Phillip's name, pursuant to a qualified domestic relations order (QDRO). The court awarded Phillip the balance of that account. In addition, the court awarded Elizabeth assets and debt obligations totaling $145,230 and awarded Phillip assets and debts totaling $143,855.

¶ 23     The trial court reserved the issue of maintenance, denied Elizabeth's request that Phillip

be ordered to make a monthly contribution to the living expenses of the two parties' adult children, and set child support for the couple's minor child at $500 per month until Phillip's license was reinstated or he found another source of income. The court did not address whether Phillip dissipated the marital estate.

¶ 24 The trial court directed Phillip's attorney to "draft the appropriate orders/judgment." On November 21, 2011, the trial court entered the "order on second portion of bifurcated hearing," reflecting the provisions set forth in the court's memorandum opinion.

¶ 25                     D. The Trial Court's March 2012 Order

¶ 26 In December 2011, Elizabeth filed a posttrial motion, requesting, among other things, the trial court enter an order finding Phillip dissipated marital assets. Following a February 2012 hearing, on March 22, 2012, the court filed an order granting Elizabeth's motion in part and denying it in part. Specifically, the court found Phillip dissipated $14,156.94 in marital assets and required him to reimburse the marital estate for that amount. The court further stated upon reconsidering "the significant disparity in earnings and earning potential, the duration of the marriage, [Elizabeth's] contribution to [Phillip's] profession and other testimony presented," it found "a fair and equitable distribution of the parties marital assets and debts require[d] a modification of the Court's prior order." The court amended its prior order to award Elizabeth 62% of the $327,950 Richard, Merrill & Peterson account in Phillip's name, pursuant to a QDRO. The court left all other terms of the distribution of assets and liabilities unchanged. The court's order directed Elizabeth's attorney to draft the amended order on the second portion of the bifurcated hearing.

¶ 27                            E. Notice of Appeal

¶ 28 On April 16, 2012, Phillip filed a notice of appeal, specifying he sought to appeal "the judgment entered March 21, 2012," upon Elizabeth's posttrial motion.

¶ 29         F. The Amended Order on Second Portion of Bifurcated Hearing

¶ 30 On April 30, 2012, the trial court signed the "amended order on second portion of bifurcated hearing," which had been prepared by Elizabeth's attorney and which modified the original "order on second portion of bifurcated hearing" pursuant to the court's March 2012 posttrial order. The court filed the amended order on May 1, 2012.

¶ 31                              II. ANALYSIS

¶ 32 On appeal, Phillip contends the trial court (1) abused its discretion by allocating approximately 55% of the marital estate to Elizabeth and (2) erred by finding Phillip dissipated approximately $14,000 in marital assets. Before addressing the merits of Phillip's appeal, however, we must determine whether we have jurisdiction.

¶ 33 Although neither party initially raised the issue of this court's jurisdiction, "we have an independent duty to examine our appellate jurisdiction." *In re Marriage of Gaudio*, 368 Ill. App. 3d 153, 156, 857 N.E.2d 332, 334 (2006). Upon request, the parties filed supplemental

briefs, addressing whether this court possessed jurisdiction where (1) the trial court reserved the issue of maintenance and did not make a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), and (2) Phillip filed a notice of appeal before the trial court entered its amended order on the second portion of the bifurcated proceedings, specifying that he was appealing the trial court's March 21, 2012, order and not any of the court's other orders. We conclude, based on the trial court's reservation of maintenance, we lack jurisdiction to consider the merits of Phillip's appeal.

¶ 34    Phillip filed his notice of appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which provides every final judgment in a civil case is appealable as of right. " 'A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy.' " *Gaudio*, 368 Ill. App. 3d at 156, 857 N.E.2d at 334 (quoting *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502, 687 N.E.2d 871, 874 (1997)). Absent a finding pursuant to Supreme Court Rule 304(a), a final order disposing of fewer than all of the parties' claims is not an appealable order. *In re Marriage of Gutman*, 232 Ill. 2d 145, 151, 902 N.E.2d 631, 634 (2008). The purpose behind requiring a Rule 304(a) finding is " 'to discourage piecemeal appeals.' " *Gutman*, 232 Ill. 2d at 151, 902 N.E.2d at 634 (quoting *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465, 563 N.E.2d 459, 463 (1990)).

¶ 35    A petition for dissolution of marriage advances a single claim–a request for an order dissolving the parties' marriage. *In re Marriage of Leopando*, 96 Ill. 2d 114, 119, 449 N.E.2d 137, 140 (1983). The other issues involved in a dissolution case, such as property disposition and support, are "questions which are *ancillary* to the cause of action" and are not separate, unrelated claims. (Emphasis in original.) *Leopando*, 96 Ill. 2d at 119, 449 N.E.2d at 140. Thus, until all of the ancillary issues are resolved, a petition for dissolution of marriage has not been fully adjudicated. *Leopando*, 96 Ill. 2d at 119, 449 N.E.2d at 140. "Stated differently, generally only a judgment that does not reserve any issues for later determination is final and appealable." *In re Marriage of Susman*, 2012 IL App (1st) 112068, ¶ 13, 980 N.E.2d 131.

¶ 36    Here, the trial court's "amended order on second portion of bifurcated proceedings" states as follows:

"With regard to the issue of maintenance, given the standard of living established during the marriage, the disparity in earning capacity of the parties, the duration of the marriage, and Mrs. Jensen's contribution to Dr. Jensen's career, she is entitled to maintenance.

Due to Dr. Jensen's current circumstances and what is believed to be a temporary lack of income, the nature of the assets and debts awarded to Dr. Jensen and his obligation to pay towards the debt on the marital residence, Dr. Jensen does not have the current ability to pay maintenance.

The issue of maintenance is reserved by this Court and to be revisited in six months along with the status of Dr. Jensen's employment and his income."

¶ 37    Thus, the trial court expressly reserved maintenance to be revisited in six months. Notwithstanding the court's reservation, Phillip argues this court possesses jurisdiction. We

disagree.

¶ 38    *In re Marriage of Mackin*, 391 Ill. App. 3d 518, 909 N.E.2d 912 (2009), is directly on point. There, the trial court did not order the mother to pay child support, expressly reserving jurisdiction by setting the matter to be reviewed after 180 days, at which point the court would examine the mother's financial circumstances. *Mackin*, 391 Ill. App. 3d at 520, 909 N.E.2d at 914. Concluding it lacked jurisdiction to consider the mother's appeal, the Fifth District noted the issue of child support was "not merely incidental," but rather, "integrally related" to the court's determination of child custody. *Mackin*, 391 Ill. App. 3d at 520, 909 N.E.2d at 914. The appellate court reasoned that by deciding to wait 180 days to examine the mother's financial circumstances, the trial court did not resolve the issue of child support, and therefore, the court dismissed the mother's appeal. *Id.*

¶ 39    Here, the trial court found Elizabeth was entitled to maintenance but, due to Phillip's economic circumstances, it did not order Phillip to pay maintenance. Thus, the court reserved maintenance, stating it would "revisit" the issue in six months to assess Phillip's financial and employment situation. The issue of maintenance is "not merely incidental," but rather, "integrally related" to the trial court's allocation of the couple's property, as section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d)(10) (West 2010)) explicitly states the court "shall" consider, in apportioning the couple's marital property, "whether the apportionment is in lieu of or in addition to maintenance." Based on the foregoing, we conclude the court's failure to resolve maintenance deprives this court of jurisdiction.

¶ 40    The cases cited by Phillip are distinguishable. In *In re Marriage of Cannon*, 112 Ill. 2d 552, 553-54, 494 N.E.2d 490, 491-92 (1986), our supreme court concluded the trial court's order, which awarded the wife $2,500 a month in maintenance but reserved review of the award for two years or less, was final and appealable. The supreme court found the trial court "made a decision" and a specific ruling with respect to maintenance, setting the amount of maintenance to be paid but providing for review. *Cannon*, 112 Ill. 2d at 556, 494 N.E.2d at 492. The court further reasoned the judgment was enforceable immediately. *Id.* This is the opposite of the court's ruling in this case. There has been no determination as to the amount of maintenance to be paid.

¶ 41    Phillip also relies on *In re Marriage of Lord*, 125 Ill. App. 3d 1, 465 N.E.2d 151 (1984), and *In re Marriage of Bingham*, 181 Ill. App. 3d 966, 537 N.E.2d 1158 (1989). In *Lord*, the trial court's dissolution order did not award the wife maintenance, reserving the question for two years. *Lord*, 125 Ill. App. 3d at 3, 465 N.E.2d at 152. It was implicit in the trial court's finding that no maintenance was justified under the present circumstances. *Lord*, 125 Ill. App. 3d at 4, 465 N.E.2d at 153. However, there was evidence that the wife in *Lord* may, within two years of the judgment, develop Raynaud's disease. *Lord*, 125 Ill. App. 3d at 3, 465 N.E.2d at 152. The trial court determined if she did develop Raynaud's disease, the court's initial property division would be inadequate absent maintenance. *Lord*, 125 Ill. App. 3d at 3, 465 N.E.2d at 152. Likewise, in *Bingham*, the trial court reserved the issue of maintenance until the couple's minor child, who was 16 at the time of dissolution, either turned 18 or finished high school, whichever happened later. *Bingham*, 181 Ill. App. 3d at 967, 537 N.E.2d at 1159. In both *Bingham* and *Lord*, the Second District concluded the trial

-7-

court's judgments were final despite the reservation of maintenance. The *Bingham* court explained, "As in *Lord*, the trial court's *** judgment was a final determination on the then present lack of need of maintenance and the retention of jurisdiction to modify the order and to award maintenance later if circumstances warranted." *Bingham*, 181 Ill. App. 3d at 972, 537 N.E.2d at 1162.

¶ 42    The language used by the trial court in this case distinguishes it from *Cannon*, *Lord*, and *Bingham*, in that the trial court found Elizabeth was entitled to maintenance but Phillip could not afford to pay due to his "current circumstances and what is believed to be a temporary lack of income." The court's order essentially implies that, as soon as Phillip regains employment, the court will order Phillip to pay some amount of maintenance, although the order provides no indication as to how much that maintenance amount will be. Thus, unlike the courts in *Cannon*, *Lord*, and *Bingham*, the court here did not make a decision but provide for modification if circumstances later changed; rather, the court essentially declined to make a decision *until* Phillip's financial and economic circumstances changed. We conclude that where, as here, the trial court's order reserves the issue of maintenance for a future determination and does not set an amount of maintenance to be paid, the court's order is not final for purposes of appeal.

¶ 43    Finally, Phillip cites *In re Marriage of Marriott*, 264 Ill. App. 3d 23, 30, 636 N.E.2d 1141, 1146 (1994), in which the trial court reserved maintenance for a period of six years, ordering the ex-husband to report on the status of his income on an annual basis and to report any gifts worth more than $1,000. In *Marriott*, the trial court made the decision to reserve maintenance based on the ex-husband's inability to pay maintenance and still meet his reasonable needs. *Marriott*, 264 Ill. App. 3d at 30, 636 N.E.2d at 1146. Although the ex-husband testified that, at times, he experienced long periods of unemployment, at the time of the couple's dissolution he was working 40 to 45 hours a week in a temporary position, and the trial court did not explicitly indicate it believed the ex-husband's income was likely to change. *Marriott*, 264 Ill. App. 3d at 26, 636 N.E.2d at 1143. By contrast, here, the trial court specifically stated it believed Phillip was experiencing a "temporary lack of income."

¶ 44    Moreover, here, the trial court reserved maintenance to be reviewed in just six months, along with the status of Phillip's employment and financial circumstances. The court's reservation of maintenance for this short period of time demonstrates a lack of finality in the court's resolution of the issue. For this reason, *Marriott*, in which the trial court reserved maintenance for six years, and *Cannon*, *Lord*, and *Bingham*, in which the trial courts entered orders that would review or reserve maintenance for approximately two years, are all distinguishable.

¶ 45    Because the trial court did not resolve the issue of maintenance, the court's order was not final, and we lack jurisdiction to consider the merits of Phillip's appeal.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we dismiss Phillip's appeal for lack of jurisdiction.

¶ 48    Dismissed.