NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230874-U

NO. 4-23-0874

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 15, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| ERIN MOORE, | ) | Circuit Court of |
|     Petitioner-Appellant, | ) | Adams County |
|     and | ) | No. 17D249 |
| CHRISTOPHER MOORE, | ) | |
|     Respondent-Appellee. | ) | Honorable |
| | ) | Talmadge "Tad" Brenner, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding petitioner failed to show the parties' settlement agreement was unconscionable or that she entered into it under duress.

¶ 2    Petitioner, Erin Moore, filed a petition for the dissolution of her marriage to respondent, Christopher Moore. On the day the matter was set for trial, the parties informed the trial court they had reached an agreement as to all pending matters. Thereafter, respondent filed a "Motion for Entry of Judgment in Accordance with Settlement Agreement," requesting the court enter a judgment for dissolution of marriage pursuant to a settlement agreement the parties had previously negotiated. The alleged agreement included a proposed judgment order, marital settlement agreement (MSA), and parenting plan. Petitioner objected to the motion, asserting, *inter alia*, that she had not agreed to the terms of the agreement and that it was unconscionable.

After a hearing, the court granted the motion. The court subsequently entered a judgment of dissolution of marriage incorporating the parties' MSA and parenting plan.

¶ 3        On appeal, petitioner argues the trial court erred by granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement" because the provisions for maintenance, child support, and parenting time in the agreement were unconscionable and because she entered into the agreement under duress. We affirm.

¶ 4        I. BACKGROUND

¶ 5        On November 22, 2017, petitioner, through attorney Casey Schnack, filed a petition for the dissolution of her marriage to respondent. The record indicates the parties were married on June 6, 2009, and they had three children who were born during the course of the marriage.

¶ 6        On March 23, 2021, the parties filed their pretrial memoranda. In her memorandum, petitioner indicated she was a homemaker and had no income. She stated respondent was a physician, received a gross monthly income of $58,821, and had an adjusted gross income for 2019 of $1,221,503. Regarding the parties' three minor children, petitioner proposed a parenting plan pursuant to which she would receive 60% of the parenting time and respondent would receive 40% of the parenting time. Petitioner requested respondent be ordered to pay child support in the amount of $1129 per month. Petitioner attached a child support guideline worksheet to her memorandum, which indicated that she calculated respondent's child support obligation based on the parties having a combined monthly net income of $60,103, petitioner having 60% parenting time, and respondent having 40% parenting time.

¶ 7        Petitioner asserted respondent had not complied with her discovery requests, and she alleged on "information and belief" that respondent owned two individual retirement

accounts (IRAs). She described other property owned by the parties in detail, including real property, vehicles, bank accounts, and respondent's 401(k) account. She attached the parties' 2019 joint tax return, the parties' bank statements, and respondent's 401(k) statements to her memorandum. She requested an award of maintenance in the amount of $19,831.67 per month for three years. A maintenance worksheet attached to petitioner's memorandum showed her maintenance calculation was premised on respondent having a net annual income of $714,012, of which petitioner would receive 33⅓%.

¶ 8 In his memorandum, respondent requested that the parties exercise parenting time on an alternating, every other day basis, with makeup days based on his work schedule. Respondent asserted that his income varied from year to year and the income he received from K-1 distributions from his business interest in the anesthesiology practice he worked for varied substantially. Respondent requested that he be ordered to pay child support in the amount of $575 per month and that maintenance be set at $12,204 per month for a period of 3.05 years. He indicated he had calculated both of these amounts by averaging his W-2 income over the last five years. He indicated he also received additional income from K-1 distributions. He requested to pay 21.7% of his K-1 distributions to petitioner as additional maintenance and child support. Respondent attached a maintenance guidelines worksheet to his memorandum, which indicated his monthly maintenance calculation was premised on his net annual income being $439,392, of which petitioner would receive 33⅓% in maintenance. Respondent also attached a child support worksheet showing he calculated monthly child support based on the parties having a combined net monthly income of $36,616, him having 50.14% parenting time, and petitioner having 49.86 % parenting time.

¶ 9          The matter was set for trial on April 6, 2021. The record contains no information about the proceedings on this date, but the parties indicated at a subsequent hearing that they engaged in settlement negotiations in court on this date, and the matter did not proceed to trial.

¶ 10          On June 7, 2022, respondent filed a "Motion for Entry of Judgment in Accordance with Settlement Agreement." The motion alleged that, on April 6, 2021, the parties reached an agreement in court as to all remaining issues and "such was announced to the Court." The motion alleged that respondent's counsel subsequently prepared a draft judgment, MSA, and parenting plan, and he sent these documents to Schnack for review. Schnack requested two changes to the documents. The motion asserted that these documents were agreed to by the parties and were enforceable against either party, but petitioner was now unwilling to agree to substantive matters to which the parties had previously agreed. Respondent requested that the court enter judgment pursuant to the parties' alleged agreement.

¶ 11          Respondent submitted as exhibits to his "Motion for Entry of Judgment in Accordance with Settlement Agreement" the draft judgment for dissolution of marriage, MSA, and parenting plan that the parties allegedly agreed to following the negotiations on April 6, 2021. These documents reflected petitioner would receive 60% of the marital property, a house with no mortgage, and maintenance in the amount of $12,204.08 per month for a period of three years. The MSA stated that petitioner would receive child support in the amount of $575 per month, which the MSA indicated was based on statutory guidelines and an equal division of parenting time. The MSA also stated:

> "To account for the additional income that [respondent] typically receives in K1 distributions, [respondent] is ordered to pay the same ratio of such distributions as he does his ordinary income. Therefore, pursuant to initial

- 4 -

calculations and current tax regulations and rates, [respondent] would pay 21.7% of his K1 distributions to [petitioner] in Maintenance/Child Support until maintenance terminates and child support is recalculated."

The parenting plan stated the following regarding a "Regular Parenting Time Schedule": "The parties shall exercise parenting time at all times and places as the parties agree. [Respondent's] work schedule shall be given deference when arranging for parenting time."

¶ 12　　Respondent also attached correspondence between his counsel and Schnack discussing two minor changes petitioner wished to be made to the documents.

¶ 13　　On August 4, 2022, petitioner filed a response to the "Motion for Entry of Judgment in Accordance with Settlement Agreement" through her new attorney, Martia Terstegge. In the response, petitioner denied ever agreeing to the alleged settlement at issue. Terstegge subsequently withdrew as counsel for petitioner, and petitioner retained attorney Betsy Blakeman.

¶ 14　　On May 9, 2023, petitioner filed through Blakeman a "Memorandum in Opposition to Respondent's Motion for Entry of Judgment." In the memorandum, petitioner asserted respondent had failed to disclose all of the marital property. She also asserted claims of coercion, duress, and unconscionability. Finally, the memorandum challenged the maintenance and child support calculations.

¶ 15　　On May 10, 2023, the trial court held a hearing on respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement." At the hearing, respondent's counsel advised the court that the hearing on April 6, 2021, was not recorded or reduced to a transcript. Counsel indicated the recording device in the courtroom had not been turned on that day, and he had not been able to obtain a transcript.

¶ 16          Petitioner testified that she did not believe that maintenance had been properly calculated under the terms of the MSA respondent was seeking to enforce. Petitioner also believed that the monthly child support of $575 provided under the MSA was too low. However, she believed the division of property set forth in the MSA was fair. Petitioner testified that the parties appeared in court on April 6, 2021, and Schnack and respondent's counsel "went in the back room" with the judge and discussed the matter. During these negotiations, Schnack gave petitioner a "thumbs up" at one point and told her it was going well. When asked if she was prepared to go to trial that day, petitioner stated: "I went there not knowing very much because at that time, I did not know the legal system and I went there because [Schnack] told me I had to be there."

¶ 17          Petitioner testified that, after the negotiations had concluded, Schnack told her they had "got[ten] everything [they] need[ed]." Petitioner later reviewed the agreement which had been reduced to writing, but she did not sign it because she believed it was unfair. She told Schnack she wanted changes to be made to the agreement, and Schnack informed petitioner that she did not want to work with her any longer. This occurred almost immediately after the April 6, 2021, court date. Petitioner then obtained a new attorney. Petitioner maintained that she did not agree to anything in court on April 6, 2021.

¶ 18          Petitioner testified that Schnack did not "do the discovery" and did not go through all the financial records. Petitioner initially stated that she had no access to the parties' financial information during the proceedings but later indicated that she had "gather[ed] that information over the years." She indicated she obtained copies of the parties' tax returns from the accountant who prepared them. She stated she provided Schnack with everything she could find, but they both agreed it was not a "complete picture."

¶ 19        Schnack testified that that she represented petitioner in the dissolution proceeding from the time the case was filed in 2017 until approximately the middle of 2021. Schnack testified that on April 6, 2021, the parties appeared in court and engaged in settlement negotiations with the input of the judge, who was a different judge than the one presiding over the motion hearing. During these negotiations, Schnack discussed the case with petitioner. There were also some settlement negotiations prior to that date. On April 6, 2021, the parties informed the trial court they had reached a settlement agreement. Schnack could not recall whether this happened in chambers or in open court, and she indicated they did not put the entirety of the agreement "on the record" at that time.

¶ 20        Schnack stated that during the in-court settlement negotiations, the parties discussed how to address the inconsistent K-1 distributions respondent received from the medical group where he worked in addition to his salary. Schnack indicated her maintenance calculation in petitioner's pretrial memorandum included these K-1 distributions, but respondent calculated monthly maintenance payments based on only his salary and requested that, in addition, a percentage of the K-1 distributions be paid to petitioner at the time he received them. Schnack testified the parties did not disagree as to whether respondent should pay maintenance based partly on these distributions; the issue was only when it should be paid to petitioner. In response to a question asking how the parties had agreed to $575 per month in child support, Schnack stated that she could not say for certain how that amount was derived, but she indicated she used "family law software" for her calculations of child support and maintenance.

¶ 21        Schnack testified that, after appearing in court on April 6, 2021, respondent's counsel drafted a written agreement consistent with the agreement the parties had reached in court and sent it to Schnack. Schnack stated she then sent these documents to petitioner. Schnack

indicated she contacted respondent's counsel and requested two to three minor changes to the documents and respondent's counsel made the requested revisions. Schnack testified that "the agreement" attached to respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement" and the other exhibits attached to the motion, including e-mails from Schnack's office, were accurate. Respondent requested that the trial court "take judicial notice" of these documents.

¶ 22　　　　Schnack testified she sent the revised agreement to petitioner, but she did not hear back from petitioner for "some time" after that. At some later point, petitioner told Schnack that she wanted substantial changes to the agreement. Schnack told petitioner that if that was "something that [she] want[ed] to pursue, please do that with another attorney." Schnack and petitioner then "parted ways." Schnack testified that, on the day of the in-court settlement negotiations and during her subsequent e-mail exchanges with respondent's counsel, she was petitioner's attorney of record and petitioner never revoked Schnack's authority to represent her during these times.

¶ 23　　　　Respondent's counsel asked Schnack if she recalled "discovery documents being exchanged, perhaps informally." Schnack stated she did. Schnack stated she believed respondent's counsel gave her respondent's W-2s and K-1 statements, although she could not remember this for certain. She stated respondent's counsel did a "good job of getting [her] the financial documents." Schnack testified she and petitioner discussed petitioner's pretrial memorandum prior to the hearing that was scheduled for April 6, 2021, and petitioner signed it. She also discussed respondent's pretrial memorandum with petitioner. Schnack indicated her negotiations on April 6, 2021, were "built off of" petitioner's pretrial memorandum.

¶ 24    The trial court took the matter under advisement and entered a written order on May 31, 2023, granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement." The court found the parties' counsel negotiated an agreement prior to and on the day the trial was set to commence. The court stated that, after the hearing date, respondent's counsel prepared an MSA and a parenting plan, which he sent to Schnack. Schnack requested two changes to the documents, which the court found were not substantive.

¶ 25    The trial court stated: "Based upon all the evidence, the credibility of the testimony presented, and the actions of counsel following April 6, 2021, the court finds that a settlement was reached by the parties on all issues pertaining to the marriage." The court also found respondent's K-1 distributions were "considered and reflected in the child support and maintenance calculations," as respondent was required to pay petitioner 21.7% of these distributions. Accordingly, the court found that "Petitioner's suggestion of unconscionability based on a failure to include K-1 income in child support fails." The court directed respondent's counsel to "supply the court with documents reflecting the parties' ultimate settlement agreement and confer with counsel for the Petitioner regarding final prove-up."

¶ 26    On August 23, 2023, the trial court entered a judgment of dissolution, which incorporated a signed MSA and a signed parenting plan.

¶ 27    This appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29                                    A. Jurisdiction

¶ 30    Initially, respondent argues that petitioner's appeal was untimely filed, and, accordingly, this court lacks jurisdiction. Respondent contends the trial court's order granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement," which

was entered May 31, 2023, is the final judgment from which petitioner is appealing because petitioner's arguments concern only this order. Respondent argues petitioner's notice of appeal, which was filed on September 22, 2023, was untimely because it was not filed within 30 days of the order granting the "Motion for Entry of Judgment in Accordance with Settlement Agreement." See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 31        "A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981). "Preliminary orders in a pending case are not appealable because they are reviewable on appeal from the final order." *Id.*

¶ 32        The trial court's order of May 31, 2023, granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement" was not a final judgment, as it was not a final determination of the litigation on the merits. The order expressly contemplated that further proceedings would follow, as it stated: "Counsel for the Respondent shall supply the court with documents reflecting the parties' ultimate settlement agreement and confer with counsel for the Petitioner regarding final prove-up." The subsequent entry of the judgment of dissolution of marriage, which incorporated the MSA and parenting plan, was the final, appealable order, as it resolved all the issues in this case. See *In re Marriage of Jensen*, 2013 IL App (4th) 120355, ¶ 35 ("[U]ntil all of the ancillary issues are resolved, a petition for dissolution of marriage has not been fully adjudicated.); *In re Marriage of Susman,* 2012 IL App (1st) 112068, ¶ 13 ("[G]enerally only a judgment that does not reserve any issues for later determination is final and appealable."). Accordingly, petitioner's notice of appeal was timely filed, as it was filed within 30 days of the judgment of dissolution of marriage. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 33                                    B. Waiver

¶ 34         Respondent next contends that "[t]he execution of the settlement documents by [petitioner's] counsel waives any objection to their entry on the basis of unconscionability and prohibits the right to appeal." Respondent notes that the MSA that was incorporated into the judgment of dissolution states: "Each party, after carefully considering the terms and provisions of this Agreement, states that he or she believes the terms and provisions to be fair, reasonable, and not unconscionable." Respondent further notes that the MSA provided that the parties agreed not to "appeal from this Agreement, or the judgment for Dissolution of Marriage approving this Agreement," except regarding terms of the MSA concerning child support, parenting time, or parental responsibility of the children.

¶ 35         "A settlement agreement is not typically subject to appellate review because an agreed order 'is a recordation of the agreement between the parties and *** not a judicial determination of the parties' rights.' " *In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 251 (2002) (quoting *In re Haber*, 99 Ill. App. 3d 306, 309 (1981)). However, such an agreement may be set aside upon a showing that it is unconscionable. *Id.*; see 750 ILCS 5/502(b) (West 2020) ("The terms of the agreement, except those providing for the support and parental responsibility allocation of children, are binding upon the [trial] court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable.").

¶ 36         In the instant case, petitioner is challenging the trial court's order granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement." During the proceedings on this motion, petitioner argued, *inter alia*, that the agreement was unconscionable. Under these circumstances, and in light of the fact that section 502(b) of the

Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502(b) (West 2020)) permits the court to set aside a settlement agreement on the basis of unconscionability, we question whether the terms of the MSA asserted by respondent may preclude petitioner from arguing on appeal that the agreement was unconscionable. In any event, as we will discuss, we find petitioner's argument fails on its merits.

¶ 37                                              C. Unconscionability

¶ 38          We now turn to the merits of petitioner's argument on appeal—namely, that the trial court erred by granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement" because the provisions of the settlement agreement concerning child support, maintenance, and parenting time were unconscionable. Petitioner contends the agreement was both procedurally and substantively unconscionable and that she entered into it under duress.

¶ 39          Initially, we note that petitioner's primary argument in the trial court in opposition to the "Motion for Entry of Judgment in Accordance with Settlement Agreement" was that no enforceable agreement existed because she never agreed to a settlement. However, on appeal, she appears to have moved away from this argument. Instead, she claims the terms of the settlement agreement were unconscionable and that she entered into the agreement under duress. Petitioner goes on to assert in several places in her brief, ostensibly in support of her claim that the agreement was unconscionable, that she never agreed to the terms of the settlement. However, these offhand assertions do not constitute a distinct issue which we may address as they are not adequately supported by reasoned legal argument or citations to authority. Accordingly, we find petitioner has forfeited any such claim. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33 ("An issue not clearly defined

- 12 -

and sufficiently presented fails to satisfy the requirements of Rule 341(h)(7) and, is, therefore, forfeited."). Moreover, petitioner's unconscionability argument presupposes the existence of a settlement agreement. Consequently, because petitioner's argument proceeds from the premise that an agreement was entered into between the parties, we do not address whether a settlement agreement was reached in the first place. Instead, we proceed to address only the claims adequately raised in petitioner's brief—namely, that the agreement was unconscionable, and petitioner entered into it under duress.

¶ 40        "In determining whether a settlement agreement is unconscionable, the court must consider (1) the conditions under which the agreement was made, and (2) the economic circumstances of the parties which result from the agreement." *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 219 (1994). "Unconscionability exists where there is an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (Internal quotation marks omitted.) *In re Marriage of Steadman*, 283 Ill. App. 3d 703, 709 (1996). "To rise to the level of being unconscionable, the settlement must be improvident, totally one-sided or oppressive." *In re Marriage of Gorman,* 284 Ill. App. 3d 171, 182 (1996). "Duress may make an agreement between spouses unconscionable." *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 41.

¶ 41        "A trial court may make a finding of unconscionability based on procedural unconscionability, substantive unconscionability, or some combination of the two." *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 774 (2007). "A contract is procedurally unconscionable if an impropriety in the process of forming the contract deprived a party of a meaningful choice." *Id.* at 775. "Substantive unconscionability is based on the fairness and obligations of the contract's terms, and it can be shown by contract terms so one-sided as to

oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." (Internal quotation marks omitted). *Id.* at 777. An agreement is substantively unconscionable "if no man in his senses, not under delusion, would make [it], on the one hand, and \*\*\* no fair and honest man would accept [it] on the other." (Internal quotation marks omitted.) *In re Marriage of Wig*, 2020 IL App (2d) 190929, ¶ 19.

¶ 42         Whether a contract or portion thereof is unconscionable is a question of law that is reviewed *de novo*. *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 86. "However, to the extent that the [trial] court made findings of fact in the analysis of unconscionability, those factual findings are reviewed under the manifest weight of the evidence standard." *Id.*

¶ 43                              1. *Procedural Unconscionability*

¶ 44         Petitioner argues the agreement was procedurally unconscionable because she lacked meaningful choice when she engaged in settlement negotiations. Petitioner notes that no formal discovery was exchanged and asserts that Schnack "ma[de] allegations on information and belief" in the pretrial memorandum. She also asserts that she testified she had no access to the parties' financial information during the marriage. Petitioner also notes it did not appear from her testimony that she was aware the matter was scheduled for trial on April 6, 2021, as she stated she only went to court that day because her attorney told her to go. Petitioner asserts that, during her testimony, she denied being involved in any negotiations, denied giving Schnack the authority to settle under the terms of the agreement, and indicated the only communication she received from Schnack on the day the agreement was negotiated was a "thumbs up" and confirmation that they "got what [they] wanted."

¶ 45   We find petitioner has not shown that the agreement was procedurally unconscionable—that is, that "an impropriety in the process of forming the contract deprived [her] of a meaningful choice." *Tabassum*, 377 Ill. App. 3d at 775. While petitioner denied being aware of or agreeing to the terms of the agreement during her testimony, Schnack gave a different account. Schnack testified she discussed the case with petitioner during the negotiations on April 6, 2021. She also stated her negotiations were based on the requests set forth in petitioner's pretrial memorandum, which Schnack had discussed with petitioner prior to the hearing. Schnack testified that she sent the written settlement documents to petitioner after the hearing on April 6, 2021, and she later sent correspondence to respondent's counsel indicating that petitioner was requesting only two minor changes. The trial court was not required to find petitioner's testimony credible, and its factual findings in the order granting respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement" indicate it found Schnack's testimony to be more credible than petitioner's. We defer to the court's credibility determination. See *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1042 (2008) ("A reviewing court will defer to a trial court's determination of credibility because the trial court is in the best position to observe the conduct and demeanor of witnesses.").

¶ 46   Also, while petitioner contends she did not have sufficient information upon which to base negotiations because no formal discovery was exchanged and she lacked access to the parties' financial information, Schnack testified that respondent's counsel did a "good job" of providing her with financial documents. Petitioner admitted she obtained copies of the parties' tax returns from the accountant who prepared them. Schnack attached the parties' 2019 tax return and bank statements to her pretrial memorandum. The only things alleged "on information and belief" in petitioner's pretrial memorandum were the existence and balances of two IRA

accounts allegedly owned by respondent. However, respondent did not indicate that he owned any such accounts in his pretrial memorandum, and petitioner does not contest the portion of the MSA concerning the division of property.

¶ 47 We reject petitioner's argument that a finding of procedural unconscionability is also warranted based on a review of the invoices Schnack attached to petitioner's pretrial memorandum, which petitioner claims shows an "utter lack of preparation." These invoices were not entered into evidence or argued by the parties at the hearing on respondent's "Motion for Entry of Judgment in Accordance with Settlement Agreement." Moreover, neither party questioned Schnack concerning whether the charges in those invoices represented all the work she did on petitioner's behalf.

¶ 48 2. *Substantive Unconscionability*

¶ 49 Petitioner argues the agreement was substantively unconscionable because the schedule for regular parenting time set forth in the parenting plan unreasonably favored respondent. Petitioner also argues the awards of maintenance and child support in the MSA were substantively unconscionable because they were below the statutory guidelines. Respondent argues the maintenance and child support amounts set forth in the MSA were calculated pursuant to statutory guidelines, noting the calculations were set forth on the maintenance and child support worksheets he attached to his pretrial memorandum. Respondent further asserts that he agreed to pay "the same percentage/ratio (21.7%) of his K1 income that he pays in maintenance and child support of his gross income" because of the erratic nature of his K-1 distributions.

¶ 50 a. Parenting Time

¶ 51 Petitioner argues the schedule for parenting time set forth in the parenting plan was unconscionable because it unreasonably favored respondent by requiring deference to his

work schedule. Petitioner also contends the parenting time schedule was statutorily deficient because it was not detailed enough to enable enforcement in a subsequent proceeding. See 750 ILCS 5/602.10(f)(2)(B) (West 2020) (stating that a parenting plan must set forth provisions for the child's living arrangements and each parent's parenting time, including "a formula or method for determining such a schedule in sufficient detail to be enforced in a subsequent proceeding."). The parenting time schedule in the instant case states: "The parties shall exercise parenting time at all times and places as the parties agree. [Respondent's] work schedule shall be given deference when arranging parenting time."

¶ 52        We find that the deference to respondent's work schedule contemplated by the parenting plan merely favored respondent and was not so one-sided as to render the agreement unconscionable. See *Hamm-Smith*, 261 Ill. App. 3d at 220 (1994) ("[T]hat an agreement merely favors one party over another does not make it unconscionable."). Insofar as petitioner is arguing that the vagueness of the parenting time schedule made it unconscionable, we disagree, as the vagueness of the provision is not inherently favorable or unfavorable to either party. Insofar as she is arguing that that the parenting plan should be reversed on the basis that was too vague to comply with section 602.10(f)(2)(B) of the Act (750 ILCS 5/602.10(f)(2)(B) (West 2020)), we find petitioner has forfeited her argument by failing to raise it in the trial court. See *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85 ("[I]ssues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal.").

¶ 53                            b. Maintenance

¶ 54        Petitioner argues the amount of maintenance awarded to her in the MSA was unconscionable because it was set below statutory guidelines. Petitioner asserts the guidelines set forth in section 504 of the Act (750 ILCS 5/504 (West 2020)) required that maintenance be set at

33⅓% of the payor's income, but, under the terms of the MSA, petitioner was required to pay only 21.7% of his K-1 distributions in addition to the monthly maintenance payments paid from his salary.

¶ 55        We disagree with petitioner's assertion that statutory guidelines required maintenance to be set at 33⅓% in this case. Generally, under the statutory guidelines, maintenance is set at 33⅓% of the payor's net income minus 25% of payee's net income. 750 ILCS 5/504(b-1)(1)(A) (West 2020). However, the statutory guidelines only apply if the combined gross annual income of the parties is less than $500,000. *Id.* § 504(b-1)(1). As the parties' combined gross annual income in this case exceeds that amount, statutory guidelines did not require that maintenance be set at 33⅓% in this case.

¶ 56        In any event, we find that the amount of maintenance provided in the MSA— $12,204.08 per month plus a percentage of respondent's K-1 distributions—is not unconscionable. The MSA indicates that the monthly amount of $12,204.08 represents 33⅓% of respondent's net monthly W-2 income. The MSA further indicates that respondent will pay 21.7% of his K-1 distributions as additional maintenance and child support. According to the MSA, this percentage, 21.7%, represents "the same ratio of such distributions as *** his ordinary income" and was arrived at "pursuant to initial calculations and current tax regulations and rates." While the monthly amount of maintenance that respondent is to pay petitioner under the terms of the MSA is approximately $7000 less per month than what she sought in her pretrial memorandum, it is not clear that the total amount she receives will be less than what she sought once the K-1 distributions are factored in. Even if the total maintenance amount petitioner receives is somewhat less than what she sought in her pretrial memorandum, the terms of the

MSA concerning maintenance are not "so one-sided as to oppress or unfairly surprise an innocent party." (Internal quotation marks omitted). *Tabassum*, 377 Ill. App. 3d at 777.

¶ 57                                                  c. Child Support

¶ 58            With regard to child support, petitioner asserts that the amount of $575 per month set forth in the MSA is unconscionable because it was "far less than the guidelines amount [petitioner's] counsel put forth in the pre-trial affidavit." Petitioner argues that even if the parties agreed to an amount below the statutory guidelines, the trial court should have reviewed the MSA to determine whether the lower amount was in the children's best interest and made findings concerning the deviation. See *In re Marriage of Hightower*, 358 Ill. App. 3d 165, 171-72 (2005) ("[W]hile a court may approve of and enter agreed orders for child support in an amount less than that provided for in the guidelines, it must first hear evidence on the relevant factors set forth in section 505(a)(2) and make an express finding as to the reason for the deviation.").

¶ 59            Although not addressed by either party, we initially note that, given the parties' high combined net income, it is not clear that the statutory guidelines applied in this case beyond setting a floor for the amount the trial court could award. See 750 ILCS 5/505(a)(3.5) (West 2020) ("A [trial] court may use its discretion to determine child support if the combined adjusted net income of the parties exceeds the highest level of the schedule of basic child support obligation, except that the basic child support obligation shall not be less than the highest level of combined net income set forth in the schedule of basic child support obligation.").

¶ 60            Assuming the statutory guidelines were applicable in this case, petitioner has not shown that the child support award in the MSA was set below the guidelines amount such that the trial court was required to make findings concerning the reason for the alleged deviation

before approving the MSA. She offers no specific argument in support of her assertion that child support was set below the guidelines amount, other than noting that the amount of child support set forth in the MSA and in respondent's pretrial memorandum ($575 per month) was lower than what she sought in her pretrial memorandum ($1129 per month). The worksheets attached to the parties' pretrial memoranda show petitioner calculated the parties' combined net income at $60,103 per month, whereas respondent calculated it at $36,616 per month. Despite this significant disparity, they asserted very similar combined "[p]reliminary basic obligation[s]" of support in their worksheets—$3821 per month on petitioner's worksheet and $3934 per month on respondent's.

¶ 61        Petitioner's calculation of child support was based on her having 60% of the overnight stays with the children and respondent having 40%. On the other hand, respondent's calculation was premised on him having 50.14% of the overnight stays and petitioner having 49.86%. As the amounts each party set forth for the preliminary basic support obligation were similar, it appears the disparity between the child support calculations they reached was almost entirely due to the percentage of overnights each party factored into their calculations. In fact, if petitioner had used the same percentages of overnights in her worksheet that respondent used in his, the total amount of child support in her worksheet would have been slightly less than $575 per month based on her use of a preliminary basic support obligation of $3821.

¶ 62        Significantly, petitioner does not argue that the approximately 50/50 split of overnights used in respondent's calculation was improper or that the amounts either party set forth as the preliminary basic support obligation were incorrect. As the appellant, petitioner has the burden of persuasion on appeal. See *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 958 (1991) ("The party prosecuting the appeal bears the burden of showing affirmatively the

errors assigned on review."). The preliminary basic support obligation amounts used by the parties to calculate child support in their pretrial memoranda may well have been incorrect. However, in the absence of any argument to that effect on appeal, we make no finding concerning the propriety of the amounts used by the parties. See *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978) ("[W]hile this court will examine the record for the purpose of affirming a judgment, it will not do so for the purpose of reversing it *** [citation], for when an appellant seeks reversal, theories not pursued nor advanced with citation of authorities are deemed [forfeited] [citation]." (Internal quotation marks omitted.)); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued with citation to authority are forfeited).

¶ 63    Accordingly, we find that petitioner has failed to demonstrate the amount of child support in the MSA was below the statutory guidelines amount based merely on the fact that she calculated a higher support amount than respondent on the worksheets attached to the parties' pretrial memoranda. As this was the only basis upon which petitioner has asserted the child support award was unconscionable, we find petitioner has not shown the child support provided in the MSA was unconscionable.

¶ 64                                  D. Duress

¶ 65    Petitioner argues that she was under duress at the time the agreement was negotiated in April 2021. She notes she did not work outside the home at that time and had three minor children. Petitioner also notes she filed a petition for injunctive relief at the outset of the case, which was never set for a hearing, alleging respondent had harassed her and threatened to take away any means of support. Petitioner asserts she was reliant on respondent for all financial support at the time of the agreement, and she lacked information concerning respondent's finances at the time the agreement was made. She contends this deprived her of the ability to

make a meaningful choice or exercise her free will. Petitioner also contends it was legally and morally wrong for respondent to withhold information from her by failing to respond to discovery requests and by threatening to stop supporting petitioner financially.

¶ 66          "Duress has been defined as including the imposition, oppression, undue influence or the taking of undue advantage of the stress of another whereby one is deprived of the exercise of his free will." *Hamm-Smith*, 261 Ill. App. 3d at 215. "Acts or threats must be legally or morally wrongful to constitute duress [citation], and duress is measured by an objective test, rather than a subjective one [citation]." *Tabassum*, 377 Ill. App. 3d at 775. "The person asserting duress has the burden of proving, by clear and convincing evidence, that he was bereft of the quality of mind essential to the making of the contract." *Hamm-Smith*, 261 Ill. App. 3d at 215.

¶ 67          Here, petitioner has not shown that she entered into the settlement agreement under duress. We may not consider the allegations in petitioner's motion for injunctive relief filed at the outset of the case concerning respondent's purported threats or harassment, as no testimony or other evidence was ever presented in support of these allegations. Petitioner's testimony concerning her lack of access to the parties' financial information was partially rebutted by her own testimony that she obtained copies of the parties' tax returns through the accountant who prepared them and by Schnack's testimony that respondent's counsel did a "good job" of providing financial information. Moreover, the trial court was not required to find petitioner's testimony on this point to be credible. See *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 26 ("[T]he trier of fact *** is free to accept or reject testimony and give whatever weight it deems appropriate to the evidence submitted."). While the record indicates petitioner was financially reliant on respondent throughout the proceedings,

nothing in the record shows that this reliance rendered petitioner "bereft of the quality of mind essential to the making of the contract." *Hamm-Smith*, 261 Ill. App. 3d at 215. Thus, we reject petitioner's duress argument.

¶ 68                              III. CONCLUSION

¶ 69          For the reasons stated, we affirm the trial court's judgment.

¶ 70          Affirmed.