2024 IL App (2d) 220244-U
No. 2-22-0244
Order filed June 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF LAWRENCE GERBER, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) | |
| and | ) | No. 17-D-1725 |
| LAURA GERBER, | ) ) ) | Honorable Charles W. Smith, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court (1) did not err in valuing the parties' businesses; but (2) erred in determining that expenses the husband incurred before marital breakdown but paid after that breakdown constituted dissipation.

¶ 2    The petitioner, Lawrence Gerber, appeals from the judgment of the circuit court of Lake County, dissolving his marriage with the respondent, Laura Gerber.  On appeal, he argues that the trial court erred in (1) valuing the parties' businesses and (2) determining that certain expenses he incurred before the irretrievable breakdown of the marriage, but paid after that breakdown, constituted dissipation.  We reverse the trial court's judgment in part and affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4      The parties were married on July 12, 1980, and have four adult children. In 1999, they formed Scholarships.com (Scholarships). Scholarships operates a website that provides free online scholarship searches to prospective college students and, in the process, collects personal data from college students for resale. In 2004, the parties established the ownership structure of Scholarships: they would own 52% of the business, and the remaining 48% would be owned by trusts for the benefit of their children.

¶ 5      The parties set up the ownership structure for Scholarships for estate planning purposes as they intended to give the children ownership but not income. Consistent with their intention to keep the income for themselves, and notwithstanding that the Scholarships operating agreement required all distributions to be *pro rata* based on ownership percentage, the parties historically made distributions from Scholarships to the trusts only to the extent necessary to cover the trusts' income taxes while utilizing the balance of Scholarships' profits for themselves. In making distributions to themselves of more than their *pro rata* share, they recorded those distributions as "shareholder loans" to prevent their capital accounts from becoming negative, triggering possible capital gains taxes.

¶ 6      In June 2005, the parties formed American Student Marketing, LLC (ASM). The parties had equal ownership in the company. Originally, ASM was created to handle the data resale transactions for Scholarships and avoid third-party brokerage fees. Lawrence and Laura operated Scholarships and ASM on a consolidated basis as essentially one business, with Scholarships carrying all of the expenses (including overhead, employees, and salaries) but with the net revenues being allocated between the businesses however the parties chose, regardless which business originated the revenue. By operating Scholarships and ASM as one consolidated business, the

parties were able to keep for themselves approximately 86% of the total profits distributed from those two businesses.

¶ 7    On August 5, 2014, Laura filed a petition for dissolution of marriage. That petition was dismissed on September 22, 2016. During those two years, both Lawrence and Laura incurred attorney fees regarding that dissolution action. Laura timely paid her attorney fees, but Lawrence did not. After unsuccessfully contesting his fees, Lawrence paid his fees of $87,335.15 in 2019, which is the same amount he would have paid had he timely paid them in 2016.

¶ 8    On October 5, 2017, Lawrence filed a petition for dissolution of marriage. The trial court later determined that the marriage had suffered an irreconcilable breakdown in December 2016.

¶ 9    On December 2, 2019, the trial court commenced a trial on the petition for dissolution. Laura's expert, Hilco Valuation Services, opined that the fair market value of the parties' ownership interests in their companies, as of December 31, 2018, was $11.171 million (the 52% ownership interest in Scholarships was worth $3.801 million and the 100% interest in ASM was worth $7.37 million). Lawrence's expert, Stout Risius Ross, opined that the fair market value of the parties' ownership interests in their companies was $4.14 million (the 52% ownership interest in Scholarships was worth $2.46 million and the 100% interest in ASM was worth $1.68 million).

¶ 10    Based on the broad disparity in expert valuations, pursuant to section 503(l) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(1) (West 2018)), the trial court appointed its own financial expert, Jeffrey Brend, to review the valuations prepared by each party's expert.

¶ 11    In his report, Brend stated that Scholarships and ASM had "existed as separate entities in name only for several years." Although the companies have different ownership structures, "[t]he parties control 100% of the operations, revenue, and expense allocation, distributions and eventual

sales terms of both entities." Brend stated this allowed the parties to ignore the operating agreements for their own financial benefit. For example, Brend noted that "[w]hile the family trusts hold a cumulative 48% interest in Scholarships, they have only received approximately 14% of the funds distributed from the two companies *** since 2008." Based on this economic reality, Brend concluded that the parties should be regarded as exercising "constructive ownership" over the trust's interests in Scholarships making them effective 100% owners of both companies.

¶ 12     For these reasons, Brend believed that Hilco and Stout both erred in their valuations by ignoring economic reality and valuing Scholarships and ASM as separate businesses. Brend explained that valuing the two entities separately "goes against the premise of the fair market value standard in which the seller would seek the highest value possible upon a sale." Based on these considerations, Brend believed that the fair market value of a 100% interest in the consolidated businesses was $9.798 million.

¶ 13     In terms of the trusts' 48% interest in Scholarships, Brend believed that if the businesses were sold, based on the way the parties had treated the trusts in the past, the parties would keep all the sale proceeds for themselves. Nonetheless, if the parties sold the trusts' shares on a fair market value, minority basis, the value of those shares would be $2.748 million, leaving a balance of $7.05 million to the parties for their combined shares of Scholarships and ASM.

¶ 14     Brend testified in defense of his report. On cross-examination, he explained that he valued Scholarships and ASM as a single enterprise because he considered ASM to be a "sham" entity and a "valuation fiction" with no assets of its own that was essentially a "d/b/a" for Scholarships. Even though he did not regard ASM as a real operating company, this did not negate ASM's status as a "legal entity."

¶ 15     He explained that the valuation discounts he applied in determining the fair market value of the trusts' minority interest was the "industry mark minority discount" of 30% to the trusts' 48% interest.

¶ 16     On December 20, 2021, the trial entered its judgment dissolving the parties' marriage. The trial court divided the marital estate equally between the parties. As to the value of the parties' businesses, the trial court found Brend's valuation analysis to be "reasonable and based on sound principles of accounting and business valuation." The trial court accepted the fair market value of the combined businesses as $9.798 million. The court also accepted that the value of the trust's interests was $2.748 million. As such, the trial court found that the fair market value of the controlling interests in Scholarships and ASM was $7.05 million, which it awarded to Lawrence. The trial court awarded other assets of equal value to Laura.

¶ 17     The trial court further found that Lawrence's payment of $87,335.15 in attorney fees for the prior dissolution action constituted dissipation because he did not pay them until 2019, which is after the irretrievable breakdown of the marriage had occurred. (The trial court did not find that the attorney fees that Laura incurred regarding the 2014 dissolution action constituted dissipation.)

¶ 18     Following the trial court's posttrial rulings, Lawrence filed a timely notice of appeal.

¶ 19                                    II. ANALYSIS

¶ 20     Lawrence's first argument on appeal is that the trial court erred in determining the value of the parties' marital businesses. In making this argument, Lawrence sets forth what he believes to be the trial court's relevant findings: (1) a 100% interest in the parties' enterprise had a fair market value of $9.798 million; (2) ASM was worth zero; and (3) a 48% interest in trusts did not belong to parties and was worth $2.748 million. Based on these findings, Lawrence insists that the parties'

interest was not worth more than $5.095 million (52% of $9.798 million), not the $7.05 million that the trial court found.

¶ 21     The trial court's determination of the value of an asset in a dissolution of marriage case will not be disturbed unless that determination is against the manifest weight of the evidence. *In re Marriage of Vancura*, 356 Ill. App. 3d 200, 203 (2005).   A factual finding is not against the manifest weight of the evidence unless the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 67.   When the record in a dissolution proceeding contains conflicting evidence regarding the value of a spouse's professional corporation, for purposes of determining distribution of marital assets, the trial court's selection of a value somewhere between the opposing values in evidence is not considered arbitrary or against the manifest weight of the evidence, provided the conflicting values are based on evidence supported by proper foundation. *In re Marriage of Head*, 273 Ill. App. 3d 404, 410 (1995).   So long as the trial court's valuation of marital assets is within the range testified to by expert witnesses, it will not ordinarily be disturbed on appeal. *Blackstone v. Blackstone*, 288 Ill. App. 3d 905, 910 (1997).

¶ 22     At the outset, we note that although the law set forth above in *Head* and *Blackstone* is well-established, Lawrence's counsel does not acknowledge this law in either his appellate brief or reply brief.   We remind appellant counsel of his responsibility and duty, as an officer of the court, "to present the law as it exists, not just as it might support [his] claims or arguments." *People v. Moore*, 2021 IL App (2d) 200407, ¶ 37.

¶ 23     Turning to the merits of Lawrence's argument, we note that he misconstrues the trial court's findings.   The trial court did not find that ASM was worthless.   Rather, it determined that ASM's value was so intertwined with Scholarships' that those two businesses could not be valued

separately. The trial court's value determination was based on the consolidated value of ASM and Scholarships. Although the parties owned only a 52% interest in Scholarships, they owned a 100% interest in ASM. Thus, the parties' ownership interests of the businesses on a consolidated basis would necessarily reflect a greater amount than just 52%. As such, Lawrence's insistence that the trial court erred in determining that the marital portion of the businesses was worth more than 52% (and that the trusts' interests was worth less than 48%) is without merit.

¶ 24 As to the trial court's determination of the value of the consolidated enterprises, we note that it was well within the range proposed by the three experts. Lawrence does not dispute that value, but rather how much of that value should have been attributed to the trusts' ownership interests. The trial court implicitly determined that the marital portion of the combined enterprises was worth 72% and that the trusts' were worth 28%. This finding is consistent with Brend's determination that, due to the challenge of selling the trusts' minority interests in Scholarships, the trusts' interests would be subject to a marketability and minority discount. Although Lawrence complains that these discounts were too high, Brend explained that the discounts were the "industry mark minority discount." It was within the trial court's discretion to accept that testimony. *First National Bank of Mount Prospect v. Village of Mount Prospect*, 197 Ill. App. 3d 855, 862-63 (1990).

¶ 25 We also note that Brend's discounts to the value of the trusts' interests is consistent with how the parties treated the trusts' interests during the marriage. That being, 86% of the profits from the combined businesses would go to the parties and that the remaining amount, which was necessary to cover the trusts' taxes and expenses, would go to the trusts. Based on this record, we cannot say the trial court's determination of how much of the value of the businesses constituted

a marital asset was against the manifest weight of the evidence. See *Blackstone*, 288 Ill. App. 3d at 910.

¶ 26   Lawrence's second contention on appeal is that the trial court erred in finding that attorneys' fees that he incurred before the irretrievable breakdown of the marriage, but paid after that breakdown, constituted dissipation. Dissipation is the "use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Schneeweis*, 2016 IL App (2d) 140147, ¶ 37. Dissipation contemplates a diminution in the marital estate's value due to a spouse's actions. *In re Marriage of Petrovich*, 154 Ill. App. 3d 881, 886 (1987). The concept of dissipation is premised upon waste. If a spouse's actions do not squander the marital estate's value, that spouse's actions cannot constitute dissipation. *In re Marriage of Miller*, 342 Ill. App. 3d 988, 994 (2003). A trial court's finding of dissipation will not be disturbed unless it is against the manifest weight of the evidence. *Schneeweis*, 2016 IL App (2d) 140147, ¶ 34.

¶ 27   We believe that the trial court's finding of dissipation was against the manifest weight of the evidence. This case does not involve a situation where Lawrence wasted marital assets by incurring debt after the marriage had broken down. Rather, the debt here was an account payable, a debt that had arisen in the normal course of the parties' marriage. Had Lawrence not paid those expenses, he would likely have wasted more money by having to pay fees, interest, and damages associated with those debts he incurred. As such, Lawrence did not dissipate the marital estate by paying the attorney fees he incurred before the marital breakdown after that breakdown. See *In re Marriage of Calisoff*, 176 Ill. App. 3d 721, 726-28 (1988) (no dissipation where husband used marital funds to pay past due federal income taxes).

¶ 28 Laura argues that none of the cases Lawrence relies upon establishes any *per se* rule that payment of existing marital debt cannot constitute dissipation. Rather, she contends that the cases Lawrence points to "establishes only that payment of existing marital debts may not be deemed dissipation if the debt payments are for a marital purpose." She points to *In re Marriage of Smith*, 128 Ill. App. 3d 1017, 1022 (1984), as an example of where the use of marital funds to pay marital debts may still be considered dissipation. There, the husband was found to have dissipated assets where he could not recall which debts he had paid. *Id.*

¶ 29 Laura's argument goes more to the quality of evidence a party must present to avoid a finding of dissipation. Here, unlike in *Smith*, there is no question as to the amount of marital expenses that Lawrence incurred before the breakdown which he subsequently paid. The trial court therefore erred in determining that Lawrence had dissipated $87,335.15 in marital assets.

¶ 30 Our determination is particularly proper in this case because the trial court did not treat the comparable attorney fees that Laura incurred before the marital breakdown as dissipation. The trial court's ultimate charge in every case is to administer justice fairly and impartially (*People v. Hass*, 100 Ill. App. 3d 1143, 1147 (1981)), and that does not occur if the court treats comparable behavior differently. This principle is an additional reason to reverse the trial court's finding of dissipation.

¶ 31                                    III. CONCLUSION

¶ 32 For the foregoing reasons, we reverse the trial court's finding as to dissipation of $87,335.15. As the trial court indicated that it was dividing the marital estate equally, we modify the judgment to increase Lawrence's portion of the marital estate by $43,667.58 (50% of $87,335.15). The remainder of the trial court's judgment is affirmed.

¶ 33 Reversed in part; affirmed as modified.